# TAB 6
## (DEFENDANTS' PROPOSED INSTRUCTIONS)

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| LYNN GARDNER MOSS and<br>KENNETH P. MOSS,<br><br>        Plaintiffs,<br><br>    v.<br><br><br>WYETH, INC. and<br>WYETH PHARMACEUTICALS INC.,<br>        Defendants. | Case No. 3:04-cv-01511-SRU<br><br><br><br><br><br>April 25, 2012 |

### WYETH'S PROPOSED JURY INSTRUCTIONS

Wyeth, Inc. and Wyeth Pharmaceuticals, Inc. (collectively "Wyeth") submit the following proposed jury instructions. Each instruction is submitted as a separate request, and a separate ruling is respectfully requested for each instruction. Wyeth respectfully reserves the right to submit such supplemental instructions and special interrogatories or withdraw or modify any of these instructions as may be required by further rulings of the Court prior to the trial, the presentation of evidence during the trial, the filing of proposed instructions by other parties, and any ruling by the Court following the submission of those instructions. By submitting these proposed instructions, Wyeth does not admit that the claims to which they pertain should be submitted to the jury and does not concede that there is any evidence to support the submission of the attached instructions. Wyeth also respectfully reserves the right to assert any objections and to make any requests that it deems appropriate (including, without limitation, "no-evidence" objections) to the charge submitted to the jury by the Court.

*/s/ Joseph W. Martini*
Joseph W. Martini (ct07225)
WIGGIN AND DANA LLP
2 Stamford Plaza
281 Tresser Boulevard
Stamford, CT 06901
Telephone: (203) 363-7600
Facsimile: (203) 363-7676
jmartini@wiggin.com

## CERTIFICATION

I hereby certify that on April 25, 2012, a copy of these proposed jury instructions was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Joseph W. Martini*
Joseph W. Martini

## TABLE OF CONTENTS

D-1    Opening Instructions.................................................................................1

D-2    Juror Attentiveness ..................................................................................2

D-3    Role of the Court .....................................................................................3

D-4    Objections and Rulings ............................................................................4

D-5    Role of the Jury .......................................................................................5

D-6    Juror Oath................................................................................................7

D-7    Corporate Parties .....................................................................................8

D-8    Sympathy .................................................................................................9

D-9    Burden of Proof – Preponderance of the Evidence .................................10

D-10   Connecticut Product Liability Act – Generally........................................12

D-11   Connecticut Product Liability Act – Learned Intermediary ......................14

D-12   Connecticut Product Liability Act – Duty to Warn...................................15

D-13   Effect of FDA Approval ..........................................................................17

D-14   Connecticut Product Liability Act – Warning Causation ..........................18

D-15   Connecticut Product Liability Act – Medical Causation............................20

D-16   Prescription Drugs Have Inherent Risks...................................................22

D-17   Compensatory Damages – Introduction ....................................................23

D-18   Compensatory Damages – Generally .........................................................24

D-19   Compensatory Damages – Economic.........................................................26

D-20   Compensatory Damages – Non-Economic.................................................28

D-21   Compensatory Damages – No Attorney Fees.............................................29

D-22   Loss of Consortium ..................................................................................30

D-23   Purpose of Punitive Damages ...................................................................31

D-24    Punitive Damages Must Be Assessed with Great Caution ............................................. 32

D-25    No Right to Punitive Damages ..................................................................................... 33

D-26    Punitive Damages – Burden of Proof ........................................................................... 34

D-27    No Punitive Damages for Negligent Conduct .............................................................. 36

D-28    Punitive Damages Must Be Directed to Conduct That Harmed Plaintiffs .................. 37

D-29    Limiting Instruction for Conduct Directed Toward Non-Parties ................................. 38

D-30    No Punitive Damages for Conduct That Was Lawful .................................................. 39

D-31    No Punitive Damages for Out-of-State Conduct .......................................................... 40

D-32    Punitive Damages Not Appropriate Re:  Reasonable Disagreement (Generally) .......... 41

D-33    Punitive Damages Not Appropriate Re:   Reasonable Disagreement (Scientific
        Community) ................................................................................................................... 42

D-34    Punitive Damages Not Appropriate Re:  Government Regulations .............................. 43

D-35    Purpose of Punitive Damages Limits When They Can Be Awarded ........................... 45

D-36    Punitive and Deterrent Effects of Compensatory Damages Award Limit the
        Imposition of Punitive Damages .................................................................................. 46

D-37    No Consideration of Data Available After the Time Period at Issue ........................... 48

D-38    Jury Must Apply Calm Discretion and Sound Reason ................................................ 49

D-39    Discovery of Cause of Action ...................................................................................... 50

D-40    What Is and Is Not Evidence ........................................................................................ 51

D-41    Direct and Circumstantial Evidence ............................................................................ 53

D-42    Inference Defined ......................................................................................................... 55

D-43    Stipulation of Facts ...................................................................................................... 56

D-44    Witness Credibility ....................................................................................................... 57

D-45    Bias ............................................................................................................................... 59

D-46    Interest in Outcome ...................................................................................................... 60

D-47    Expert Witness .............................................................................................................. 61

D-48    Conflicting Expert Testimony ....................................................................... 62

D-49    Judicial Notice [If Applicable] .................................................................... 63

D-50    Use of Depositions at Trial .......................................................................... 64

D-51    Charts and Summaries in Evidence .............................................................. 65

D-52    Charts and Summaries Not Admitted in Evidence ....................................... 66

D-53    Closing Instructions Regarding Deliberations ............................................. 67

D-54    Right to See Exhibits and Hear Testimony; Communications with Court ..... 69

D-55    Selection of Foreperson ............................................................................... 70

D-56    Return of Verdict ......................................................................................... 71

D-57    Deliberations ............................................................................................... 72

**D-1**      **<u>OPENING INSTRUCTIONS</u>**

Now that the evidence in this case has been presented, the time has come for me to instruct you on the law.  My instructions will be delivered in four parts:  First, some instructions on general rules that define and control the role of the court and the duty of the jury in a civil case; second, instructions that define the elements of the causes of action alleged in the complaint in this case—that is, what the plaintiffs must have proved at trial in order to make their case; third, some rules and guidelines for your deliberations; and fourth, some closing remarks regarding your deliberations.

**D-2**     **JUROR ATTENTIVENESS**

It has been obvious to me and to counsel that you have faithfully discharged your duty to listen carefully and observe each witness who testified and to consider the evidence introduced during the trial.  Your interest never flagged, and you have followed the testimony with close attention.  I ask you to give me that same careful attention as I instruct you on the law.

**Source:**     4 Hon. Leonard B. Sand, et al., Modern Federal Jury Instructions – Civil ¶ 71-1.

**D-3**      <u>**ROLE OF THE COURT**</u>

I will now provide you with some general rules that define and control the role of the Court and the duty of the jury.

As Judge, I perform basically two functions during the trial.  First, I decide what evidence is admissible for your consideration.  You have heard me doing that throughout the trial.  Second, I instruct you on the law that you are to apply to the facts.  I gave you some preliminary instructions before trial began and some during the course of the trial when that was necessary, but it is now – at the close of the evidence – that most of the instructions are given.

If any lawyer has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

<u>**Source:**</u>      4 Hon. Leonard B. Sand, et al., Modern Federal Jury Instructions – Civil ¶ 71-2.

**D-4**    <u>**OBJECTIONS AND RULINGS**</u>

It is the duty of the attorney on each side of a case to object when the other side offers testimony or other evidence which the attorney believes is not properly admissible.  You should not show prejudice against an attorney or his or her client because the attorney has made an objection.

Upon allowing testimony or other evidence to be introduced over the objection of a lawyer – that is, in overruling a lawyer's objection – the Court does not, unless expressly stated, indicate any opinion as to the weight or effect of the credibility of all witnesses and the weight and effect of all evidence.

When the Court sustained an objection to a question addressed to a witness, the jury must disregard the question entirely, and may draw no inference from the wording of it, or speculate as to what the witness would have said if he or she had been permitted to answer any question.

**Source:**     4 Hon. Leonard B. Sand, et al., Modern Federal Jury Instructions – Civil ¶ 71-6.

**D-5**   **ROLE OF THE JURY**

As members of the jury, you are the sole and exclusive judges of the facts.  You pass upon the evidence.  You determine the credibility of the witnesses.  You resolve such conflicts as there may be in the testimony.  You draw whatever, reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

In determining these issues, no one may invade your province or functions as jurors.  To determine the facts, you must rely upon your own recollection of the evidence.  What the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions is not evidence.  Nor is what I may have said – or what I may say in these instructions – about a fact in evidence.  In this connection, you should bear in mind that a question put to a witness is never evidence; it is only the answer which is evidence.  But you may not consider any answer that I directed you to disregard or that I directed struck from the record.  Do not consider such answers.

Since you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be.  The rulings I have made during the trial are not any indication of my views of what your decision should be as to whether or not Plaintiffs have proven their case.

Draw no inference from the fact that upon occasion I may have asked questions of certain witnesses.  These questions were only intended for clarification or to expedite matters and certainly were not intended to suggest any opinions on my part as to the verdict you should render, or whether any of the witnesses may have been more credible than any other witnesses.

You are expressly to understand that the court has absolutely no opinion as to the verdict you should render in this case.

As to the facts, ladies and gentlemen, you are the exclusive judges.  You are to perform the duty of finding the facts without bias or prejudice to any party.

**Source:**        4 Hon. Leonard Sand, et al., Modern Federal Jury Instructions – Civil ¶ 71-3.

**D-6**    **JUROR OATH**


In determining the facts, you are reminded that you took an oath to render judgment impartially and fairly, without prejudice or sympathy and without fear, solely upon the evidence in the case and the applicable law.  I know that you will do this and reach a just and true verdict.


**Source:**         4 Hon. Leonard Sand, et al., Modern Federal Jury Instructions – Civil ¶ 71-4.

**D-7**     **CORPORATE PARTIES**

The fact that in this case a corporation is involved as a party must not affect your decision in any way and does not mean the corporation is entitled to any lesser consideration by you.  All parties are equal before the law and must be treated as equals in a court of justice.  You must decide this case with the same fairness that you would use if you were deciding the case between individuals.

A corporation can act only through its agents – that is, its employees, officers, or authorized representatives.  In order to find that the act of an agent was binding on the corporation, you must find that the agent had authority to act in the manner in which he or she is alleged to have acted.

**Source**:   Conn. Civil Jury Instructions, No. 2.2-1; 4 Hon. Leonard Sand, et al., Modern Federal Jury Instructions – Civil ¶ 72-1; Eleventh Circuit Pattern Jury Instructions (Civil Cases), Basic Instructions, No. 2.2; Fifth Circuit Pattern Jury Instructions, No. 2.13.

**D-8**     <u>**SYMPATHY**</u>

Your decision in this case must not be reached on the basis of sympathy or bias for or prejudice against any party.  The parties come to court asking simply for a cool, impartial determination of the disputed issues based on the facts and the law.  That is what they are entitled to, and that is how you should approach the decision of this case.

**Source**:    Connecticut Civil Jury Instructions, No. 2.9-1.

**D-9      BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE**

The law requires Plaintiffs to prove every essential part of their claims by a preponderance of the evidence.  To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true.  A preponderance of the evidence means the greater weight of the evidence.   In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who called them, and all of the exhibits in evidence, regardless of who produced them.   In weighing the evidence, keep in mind that it is the quality and not the quantity of evidence that is important.   The weight to be accorded each piece of evidence is for you to decide.

If you find that the credible evidence on a given issue is evenly divided between the parties – that it is equally probable that one side is right as it is that the other side is right – then you must decide that issue against the party having this burden of proof, which are the plaintiffs in this case.  That is because the party bearing this burden must prove more than simple equality of evidence – the party must prove the element at issue by a preponderance of the evidence.  On the other hand, the party with this burden of proof need prove no more than a preponderance.

Because Plaintiffs always bear the burden of proof for all of their claims, Wyeth does not have to present any evidence to disprove any of Plaintiffs' claims.  However, if Plaintiffs fail to establish any essential part of any of their claims by a preponderance of the evidence, you should find for Wyeth as to that claim.

**Source**:   Conn. Civil Jury Instructions, Nos. 2.6-1 & 3.2-1; 4 Hon. Leonard Sand, et al.,
Modern Federal Jury Instructions – Civil ¶ 73-2; Eleventh Circuit Pattern Jury
Instructions (Civil Cases), Basic Instructions, No. 6.1.

**D-10**   **CONNECTICUT PRODUCT LIABILITY ACT – GENERALLY**

Plaintiffs claim that Premarin and Prempro were defective because they allege that these prescription drugs did not come with an adequate warning about the risk of breast cancer.  To establish this claim, the law requires Plaintiffs to prove each of the following elements by a preponderance of the evidence:

1. That when Dr. Mary Ellen May prescribed Premarin and Prempro to Lynn Gardner Moss, Wyeth actually knew there was a risk of breast cancer from using those prescription drugs or reasonably should have known of that risk by the use of the scientific knowledge available;

2. That Dr. May would not have known that Premarin and Prempro were associated with a risk of breast cancer when she prescribed them to Mrs. Moss;

3. That Wyeth did not adequately warn Dr. May of a risk of breast cancer associated with Premarin and Prempro;

4. That if Wyeth had given Dr. May adequate warnings about the risk of breast cancer, then Dr. May would not have prescribed Premarin and Prempro to Mrs. Moss; and

5. That Premarin and Prempro caused Mrs. Moss's breast cancer.

If Plaintiffs fail to prove any of these elements, then you must find for Wyeth on this claim.  The fact that Mrs. Moss was injured is insufficient, by itself, to establish any of these elements.  I will now explain some of these elements to you in further detail.

**Source:**   Connecticut Civil Jury Instructions, No. 3.10-2; Conn. Gen. Stat § 52-572q; *Sharp v. Wyatt, Inc.*, 627 A.2d 1347, 1350, 1352-54 (Conn. 1993); *Tomer v. Am. Home Prods. Corp.*, 368 A.2d 35, 39-40 (Conn. 1976); *Gajewski v. Pavelo*, 652 A.2d 509, 514-16

(Conn. App. Ct. 1994); *LaMontagne v. E.I. Du Pont de Nemours & Co.*, 834 F. Supp. 576, 595 (D. Conn. 1993), *aff'd*, 41 F.3d 846 (2d Cir. 1994); *Goodson v. Searle Labs.*, 471 F. Supp. 546, 548-49 (D. Conn. 1978).

**D-11    CONNECTICUT PRODUCT LIABILITY ACT – LEARNED INTERMEDIARY**

When considering Wyeth's duty to warn, you must consider that Premarin and Prempro were only available to Mrs. Moss by prescriptions written by her physician, Dr. Mary Ellen May. Wyeth's duty was to warn Dr. May of the potential risks of Premarin and Prempro. Wyeth had no duty to warn Mrs. Moss of those risks.

Dr. May acted as a learned intermediary between Mrs. Moss and Wyeth. That means Dr. May independently assessed the risks and benefits of Premarin and Prempro and decided whether to prescribe those prescription drugs. Dr. May had the medical knowledge and special expertise necessary to weigh technical or complex information about Premarin and Prempro. With that information, Dr. May must assess the risks and benefits of Premarin and Prempro in light of Mrs. Moss's particular medical history and treatment needs.

If you find that Dr. May was adequately warned of a potential risk of breast cancer associated with Premarin and Prempro, even if she did not pass on this warning to Mrs. Moss, then you must find for Wyeth on Plaintiffs' claim that Wyeth's warnings were inadequate.

**Source:**    *Hurley v. Heart Physicians, P.C.*, 898 A.2d 777, 783-84 (Conn. 2006); *Vitanza v. Upjohn Co.*, 778 A.2d 829, 835-37, 840 (Conn. 2001); *Breen v. Synthes-Stratec, Inc.*, 947 A.2d 383, 386-89 (Conn. App. Ct. 2008); *Swoverland v. GlaxoSmithKline*, No. 3:10cv914 (SRU), Summ. J. Ruling Tr. at 18-20 (D. Conn. Oct. 5, 2011) (Underhill, J.); *Allen v. Mentor Corp.*, 2006 WL 861007, at *5-7 (D. Conn. Mar. 31, 2006); *Goodson v. Searle Labs.*, 471 F. Supp. 546, 548-49 (D. Conn. 1978).

**D-12**   **CONNECTICUT PRODUCT LIABILITY ACT – DUTY TO WARN**

Wyeth had a duty to warn Dr. Mary Ellen May only of the risks from using Premarin and Prempro that Wyeth knew or reasonably should have known at the time Dr. May prescribed those prescription drugs to Mrs. Moss.   Wyeth had no duty to warn of any risks that were unknown or unforeseeable at that time.   In considering this factor, you may only consider scientific, medical, or safety standards, practices, or knowledge that Wyeth knew or reasonably should have known before Dr. May stopped prescribing Premarin or Prempro to Mrs. Moss.

An adequate warning is one that sufficiently informs doctors of the risks associated with the use of the drug.   An adequate warning need not be perfect; it need only be reasonable.   You should consider whether the warning was reasonable, not whether it was the best possible warning.

A manufacturer is not obligated to warn about all possible dangers of its product.   Thus, a product is not defective simply because it does not contain every conceivable warning.

In addition, Wyeth cannot be held liable for failing to warn about a risk associated with Premarin or Prempro that Mrs. Moss or Dr. May already knew about.   If either Mrs. Moss or Dr. May knew of a risk of breast cancer associated with Premarin or Prempro, then Wyeth cannot be liable for an alleged failure to adequately warn about that risk.

The information supplied by a drug manufacturer is only one source a doctor must consult, and she is expected to make an independent medical judgment in determining whether a given drug is appropriate for a particular patient.   Therefore, even if you find that Wyeth failed to provide adequate warnings to Dr. May, you must find for Wyeth if Dr. May did not rely on the

Premarin or Prempro label in prescribing those drugs to Mrs. Moss or was aware of the risk of breast cancer from any other source.

**Source:**   *LaMontagne v. EI Du Pont De Nemours & Co., Inc.*, 41 F.3d 846, 859 (2d Cir. 1994) ("[T]he seller's duty to warn encompasses only those dangers 'of which he knows, or should know.'") (citation omitted); *Id.* ("'[T]here is no duty to warn of unknown or unforeseeable risks.'"); *Basko v. Sterling Drug, Inc.*, 416 F.2d 417, 426 (2d Cir. 1969) ("As we indicated earlier, there is no duty to warn of unknown or unforeseeable risks."); *Hurley v. Heart Physicians, PC*, 898 A.2d 777, 783 (Conn. 2006) ("Generally, a manufacturer's duty to warn of dangers associated with its products pertains only to known dangers ...."); *accord Vitanza v. Upjohn Co.*, 778 A.2d 829, 836 (Conn. 2001) (same); *see* Conn. Gen. Stat § 52-572q(b).

## D-13    EFFECT OF FDA APPROVAL

Under the Food and Drug Administration ("FDA") regulations, a prescription drug manufacturer must obtain approval from the FDA before it can sell its product. The fact that the FDA has approved a drug means that the FDA has found that the drug is safe and effective when used in accordance with the drug's label.

The FDA reviewed and approved the use of Premarin and Prempro at all relevant times in this case. The FDA also reviewed and approved the label and patient package inserts that were in effect at the time Dr. Mary Ellen May prescribed Premarin and Prempro to Mrs. Moss. In deciding whether the warning contained in the label or package insert was adequate, you may consider the fact that the FDA reviewed and approved the language used in the label and package insert in light of the then-available scientific and medical data, although the FDA's approval does not, by itself, conclusively mean that the warning was adequate.

**Source:**   *Wyeth v. Levine,* 129 S. Ct. 1187, 1193, 1195-96 (2009); *Walters v. Howmedica Osteonics, Corp.*, 676 F. Supp. 2d 44, 56 (D. Conn. 2009) (dismissing punitive damages claim as a matter of law where the defendant "developed trays that complied with regulatory and customer requirements"); *Goodson v. Searle Labs.*, 471 F. Supp. 546, 549 (D. Conn. 1978) (same; "All of this material had been reviewed and approved by the Federal Drug Administration").

**D-14**   **CONNECTICUT PRODUCT LIABILITY ACT – WARNING CAUSATION**

If you find that the Premarin and Prempro labels, warning Dr. Mary Ellen May of the risk of breast cancer, were adequate, then you need not deliberate any further.  However, if you find that the warning of the risk of breast cancer was inadequate, then you will consider the element of causation.  Under this element, Plaintiffs must prove by a preponderance of the evidence that Wyeth's alleged failure to adequately warn Dr. May about a risk of breast cancer associated with Premarin or Prempro caused Lynn Gardner Moss to develop breast cancer.  This element has two components that Plaintiffs must prove and that you must address.

First, Plaintiffs must prove that Wyeth's alleged failure-to-warn Dr. May was a "cause in fact" of Mrs. Moss's breast cancer.  Plaintiffs must prove that if Wyeth had given an adequate warning about a risk of breast cancer associated with Premarin or Prempro to Dr. May, then Dr. May would not have prescribed that prescription drug to Mrs. Moss, and Mrs. Moss would not have developed breast cancer.  If, despite an inadequate warning about a risk of breast cancer, Dr. May would still have prescribed Premarin and Prempro to Mrs. Moss or if Mrs. Moss would still have developed breast cancer, then Wyeth is not liable.

A causal connection, if any, between an alleged failure to warn and Mrs. Moss's breast cancer must be based upon proven facts.  You must consider from the evidence presented at trial all the reasons why Dr. May prescribed Premarin and Prempro to Mrs. Moss.  You may also consider whether Dr. May independently knew about a risk of breast cancer associated with Premarin or Prempro.

Second, Plaintiffs must prove that Wyeth's alleged failure to warn Dr. May was a "proximate cause" of Mrs. Moss's breast cancer.  An action is a proximate cause of her breast

cancer if it was a "substantial factor" in causing her breast cancer.  A "substantial factor" is a factor that contributes materially to the production of the injury.  It must be more than a remote, factor.  An alleged failure to warn is not a substantial factor in causing breast cancer if the same harm would have occurred if Wyeth had given an adequate warning to Dr. May.

The mere possibility that an alleged failure to warn caused Mrs. Moss's breast cancer is insufficient.  There may be many "possible" causes that could have produced her injury.  A "possible" cause only becomes "probable" when, in the absence of other reasonable causal explanations, it becomes more likely than not that the injury was a result of its action.

**Source**:   Conn. Gen. Stat. § 52-572q(c); Connecticut Civil Jury Instructions, Nos. 3.1-1 to 3.1-4, 3.10-1 to 3.10-2; *Winn v. Posades*, 913 A.2d 407, 411, 413 (Conn. 2007); *Craig v. Driscoll*, 813 A.2d 1003, 1016-18 (Conn. 2003); *Sharp v. Wyatt, Inc.*, 627 A.2d 1347, 1354-55 (Conn. 1993); *Grody v. Tulin*, 365 A.2d 1076, 1079-80 (Conn. 1976); *Peatie v. Wal-Mart Stores, Inc.*, 961 A.2d 1016, 1025-26 (Conn. App. Ct. 2009); *Russo v. Phoenix Internal Med. Assocs., PC*, 950 A.2d 559, 566 (Conn. App. Ct. 2008); *DeOliveira v. PMG Land Assocs., L.P.*, 939 A.2d 2, 8 (Conn. App. Ct. 2008); *Swoverland v. GlaxoSmithKline*, No. 3:10cv914 (SRU), Summ. J. Ruling Tr. at 21-22 (D. Conn. Oct. 5, 2011) (Underhill, J.); *Allen v. Mentor Corp.*, 2006 WL 861007, at *5-7 (D. Conn. Mar. 31, 2006); *Weigold v. Patel*, 840 A.2d 19, 25 (Conn. App. Ct. 2004); *Danise v. Safety-Kleen Corp.*, 17 F. Supp. 2d 87, 95-97 (D. Conn. 1998); *Vickers v. Jessup*, 629 A.2d 457, 460-61 (Conn. App. Ct. 1993); *Goodall v. United Illuminating*, 1998 WL 914274, at *7-8 (Conn. Super Ct. Dec. 15, 1998); Restatement (Second) of Torts § 431.

**D-15    CONNECTICUT PRODUCT LIABILITY ACT – MEDICAL CAUSATION**

In addition to proving that Wyeth's alleged failure to warn Dr. May caused Mrs. Moss's breast cancer, Plaintiffs must further prove that Mrs. Moss's breast cancer was caused by taking Premarin or Prempro.  This causation analysis also has two elements that Plaintiffs must prove.

First, Plaintiff must prove that taking Premarin or Prempro was a "cause in fact" of Mrs. Moss's breast cancer.  That is, Plaintiffs must prove by a preponderance of the evidence that Premarin or Prempro was an actual cause of Mrs. Moss's injuries; that is, she would not have developed breast cancer if she did not take Premarin or Prempro.  The test for cause in fact is "Would Mrs. Moss's breast cancer have occurred were it not for taking Premarin or Prempro?"  If your answer is "yes," then taking Premarin or Prempro was not a cause in fact of Mrs. Moss's injuries.  The fact that Mrs. Moss developed breast cancer, standing alone, is insufficient to prove that Premarin or Prempro was a cause in fact of her breast cancer.  A causal connection, if any, between taking Premarin or Prempro and Mrs. Moss's breast cancer must be based upon proven facts.

Second, Plaintiffs must prove that taking Premarin or Prempro was a "proximate cause" of Mrs. Moss's breast cancer.  When answering this question, you must apply the same definition for proximate cause as I provided you earlier.

Plaintiffs must prove that taking Premarin or Prempro caused Mrs. Moss's breast cancer to a reasonable degree of medical probability based upon competent expert testimony.  The fact that Mrs. Moss developed breast cancer is insufficient, in itself, to prove causation.

**Source:**   Connecticut Civil Jury Instructions, Nos. 3.1-1 to 3.1-4, 3.10-1 to 3.10-2; *Winn v. Posades*, 913 A.2d 407, 411, 413 (Conn. 2007); *Craig v. Driscoll*, 813 A.2d 1003, 1016-18 (Conn. 2003); *Grody v. Tulin*, 365 A.2d 1076, 1079-80 (Conn. 1976); *Peatie v. Wal-Mart Stores, Inc.*, 961 A.2d 1016, 1025-26 (Conn. App. Ct. 2009); *Russo v. Phoenix Internal Med. Assocs., PC*, 950 A.2d 559, 566 (Conn. App. Ct. 2008); *DeOliveira v. PMG Land Assocs., L.P.*, 939 A.2d 2, 8 (Conn. App. Ct. 2008); *Weigold v. Patel*, 840 A.2d 19, 25 (Conn. App. Ct. 2004); *Vickers v. Jessup*, 629 A.2d 457, 460-61 (Conn. App. Ct. 1993); *Goodall v. United Illuminating*, 1998 WL 914274, at *7-8 (Conn. Super Ct. Dec. 15, 1998); Restatement (Second) of Torts § 431.

**D-16    PRESCRIPTION DRUGS HAVE INHERENT RISKS**

Prescription drugs, by their very nature, cannot be made absolutely safe.  The law recognizes that prescription drugs are beneficial and their use is fully justified, even though they involve risks that cannot be avoided.  Thus, you cannot find Wyeth liable just because Mrs. Moss may have been harmed from taking Premarin or Prempro.

**Source:**    *Hurley v. Heart Physicians, P.C.*, 898 A.2d 777, 783-86 (Conn. 2006); *Vitanza v. Upjohn Co.*, 778 A.2d 829, 835-37 (Conn. 2001); *Swoverland v. GlaxoSmithKline*, No. 3:10cv914 (SRU), Summ. J. Ruling Tr. at 18 (D. Conn. Oct. 5, 2011) (Underhill, J.); Restatement (Second) of Torts § 402A, cmt. k.

**D-17**   **COMPENSATORY DAMAGES – INTRODUCTION**

If you find that Plaintiffs have proven all of the required elements of one or more of their claims, then you may consider whether they are entitled to any compensatory damages. However, you should not infer that they are entitled to recover damages merely because I am instructing you on the elements of damages.  It is exclusively your function to decide upon liability, and I am instructing you on damages only so that you will have guidance in the event you decide that Plaintiffs are entitled to recovery.

**Source:**      4 Hon. Leonard B. Sand, et al., Modern Federal Jury Instructions – Civil ¶ 77-1; Connecticut Civil Jury Instructions, Nos. 2.7-1, 2.7-3, 3.4-1.

**D-18    COMPENSATORY DAMAGES – GENERALLY**

If you reach the issue of compensatory damages for one or more of Plaintiffs' claims, then you may award Plaintiffs an amount of money that will fairly and adequately compensate Plaintiffs for their damages associated with that particular claim, but only those damages that Plaintiffs prove to be both caused in fact and proximately caused by Wyeth's conduct. You should assess the amount of damages, if any, that you find to be justified by a preponderance of the evidence as full, just, and reasonable compensation for all of Plaintiffs' damages, no more and no less. Compensatory damages are not allowed as a punishment and must not be imposed or increased to penalize Wyeth. Injuries and losses for which Mrs. Moss's estate should be compensated, if proven to have been caused by Wyeth, include those that Mrs. Moss sustained up to and including the time of her death and, as I will explain shortly, damages sustained because of her death. I will separately explain later the damages that Kenneth Moss, as the spouse of Mrs. Moss, can individually recover for his loss of consortium.

Just as Plaintiffs have the burden of proving liability by a preponderance of the evidence, Plaintiffs also have the burden of proving their entitlement to recover damages by a preponderance of the evidence. To that end, Plaintiffs must prove both the nature and extent of each particular loss or injury for which they seek to recover damages and that the particular loss or injury in question was caused by Wyeth's conduct, both as a cause in fact and a proximate cause.

You may not guess or speculate as to the nature or extent of Plaintiffs' losses or injuries because it is only actual damages that are recoverable. Your decision must be based on reasonable probabilities in light of the evidence presented at trial. In the case of intangible things

like pain and suffering or loss of life, it is not value you are trying to determine, but an amount that will fairly compensate for those claims of damage.  Any such award should be fair, just and reasonable in the light of the evidence.

The arguments of the attorneys are not evidence of damages.  Although you may find that computing damages may be difficult, you must not let that difficulty lead you to engage in guesswork.  Your award must be based on your reasoned judgment applied to the testimony of the witnesses and the other evidence that has been admitted during trial.

**Source:**    Connecticut Civil Jury Instructions, Nos. 2.7-3, 3.4-1, 3.4-7; 4 Hon. Leonard B. Sand, et al., Modern Federal Jury Instructions – Civil ¶ 77-3; *Bianco v. Floatex, Inc.*, 144 A.2d 310, 311-12 (Conn. 1958); *Freda v. Smith*, 111 A.2d 679, 684 (Conn. 1955).

**D-19   COMPENSATORY DAMAGES – ECONOMIC**

Economic damages are monies awarded as compensation for monetary losses and expenses which Lynn Gardner Moss incurred, both before her death and as a result of her death, to the extent those losses and expenses are attributable to Wyeth's alleged conduct.  Economic damages include expenses for reasonable and necessary medical care, reasonable funeral expenses, and the value of Mrs. Moss's lost earning capacity as a result of her injuries and death. Plaintiffs must prove by a preponderance of the evidence the reasonable amount of economic damages and that those damages were legally caused by Wyeth's alleged conduct, as I have explained the concepts of cause in fact and proximate causation to you.  In determining Mrs. Moss's lost earning capacity, you must base an award, if any, on the evidence presented at trial that you credit, and you may consider her salary or wages before her injuries and death, although that is not conclusive evidence of her earning capacity.  You may also consider Mrs. Moss's general experience as a wage earner and her qualifications for conducting a gainful occupation. Damages are necessarily limited to the period of time you find would have been Mrs. Moss's length of life and the number of years she likely would have worked had she not died.  It is required that you subtract from any award of damages for loss of earning capacity the taxes that would have been paid on those earnings to arrive at a figure for net earnings, and then to reduce to a present value the net earnings that would have been received in the future because the damages are being received today and not when the future wages or salary would have been paid. The probable cost of Mrs. Moss's future personal living expenses, as proven at trial, must also be subtracted from the gross amount of future lost earnings when calculating the net lost earnings that must then be reduced to a present value.  Those expenses are those personal expenses

reasonably necessary for Mrs. Moss to have spent to maintain a reasonable lifestyle for the likely

number of years she would have lived had she not died, although the expenses do not include

recreational activities.

**Source:**     Connecticut Civil Jury Instructions, Nos. 3.4-7, 3.4-1; *Carrano v. Yale-New Haven Hospital*, 904 A.2d 149, 169-71 (Conn. 2006); *Katsetos v. Nolan*, 368 A.2d 172, 183 (Conn. 1976); *Floyd v. Fruit Industries, Inc.*, 136 A.2d 918, 924-27 (Conn. 1957); *Tesler v. Johnson*, 583 A.2d 133, 135-36 (Conn. App. 1990).

**D-20     COMPENSATORY DAMAGES – NON-ECONOMIC**

Non-economic damages means compensation for certain non-monetary losses allegedly sustained by Lynn Gardner Moss both before her death and as a result of her death.   They include such matters as pre-death pain and suffering, loss of the ability to carry on and enjoy life's pleasures, and loss of life.   Non-economic damages must be proven by a preponderance of the evidence and can be awarded only to the extent they are proven to have been caused by Wyeth's alleged conduct, both as a cause-in-fact and a proximate cause.   There is no precise mathematical formula for you to apply, but the rule is that Mrs. Moss's estate may be awarded fair, just, and reasonable compensation insofar as money can compensate for any proven non-monetary losses.   Non-economic damages related to Mrs. Moss's death must take into account her life expectancy in the absence of her breast cancer as may have been proven by Plaintiffs at trial.

**Source:**      Connecticut Civil Jury Instructions, Nos. 3.4-7, 3.4-1; *Parasco v. Aetna Cas. & Sur. Co.*, 712 A.2d 433, 436 (Conn. App. Ct. 1998) ("A fact finder is not required to award noneconomic damages simply because economic damages are awarded.").

**D-21**   **COMPENSATORY DAMAGES – NO ATTORNEY FEES**

      If you find for Plaintiffs, then you must not take into account any consideration of attorney's fees or court costs in deciding the amount of Plaintiffs' damages.

**Source:**    *Comm'r of Envtl. Protection v. Mellon*, 945 A.2d 464, 470 (Conn. 2008) ("'[T]he common law rule in Connecticut, also known as the American Rule, is that attorneys fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception." (Internal quotation marks omitted.'") (citation omitted); *Rizzo Pool Co. v. Del Grosso*, 689 A.2d 1097, 1105 (Conn. 1997) ("The general rule of law known as the 'American rule' is that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception. … Connecticut adheres to the American rule.") (citations omitted); 2 Hon. Leonard B. Sand, et al., Modern Federal Jury Instructions – Civil at 11-365.

**D-22**   **LOSS OF CONSORTIUM**

Plaintiff Kenneth Moss submits his own individual claim for loss of consortium, which is a suit by a spouse for the loss of the affection, dependence, and companionship that he has sustained because of his spouse's injury or death.  Damages awarded for loss of consortium include both past and future loss and are measured by the extent of the loss incurred, to the extent that money can measure it.

The term "consortium" encompasses the services of Lynn Gardner Moss and the variety of intangible relations which existed between Kenneth and Lynn Moss, including affection, society, companionship, and physical intimacies.

For his claim of loss of consortium, Kenneth Moss must prove that his wife's injuries and death caused him damages.  He can only recover damages if his wife's estate also recovers damages because Mr. Moss's claim for loss of consortium is derivative of the claims brought on behalf of his late wife for her estate.  In the event you award any damages for loss of consortium, you must take into account the life expectancies of both spouses (including Mrs. Moss's life expectancy had she not developed breast cancer) and base your award on the shorter life expectancy.

**Source:**      Connecticut Civil Jury Instructions, No. 3.4-3.

**D-23**   **PURPOSE OF PUNITIVE DAMAGES**

If you decide not to award any compensatory damages, then you need not consider any further matters.  However, if you award compensatory damages, then you may consider whether in the circumstances of this case it is appropriate to award punitive damages, in addition to compensatory damages, against Wyeth.  The fact that I am instructing you about punitive damages does not mean that I believe such an award is appropriate.  Whether or not to award punitive damages is for you to decide in accordance with these instructions and based on the evidence in this case.

Punitive damages are not to compensate Plaintiffs for any injury or losses.  Rather, punitive damages are intended to punish a wrongdoer for outrageous wrongdoing, in the form of willful, wanton, or reckless misconduct, and to serve as a deterrent.

**Source**:   Connecticut Civil Jury Instructions, No. 3.4-4; *Exxon Shipping Co. v. Baker*, 128 S. Ct. 2605, 2621 (U.S. 2008) ("The prevailing rule in American courts also limits punitive damages to cases . . . where a defendant's conduct is 'outrageous,' owing to 'gross negligence,' 'willful, wanton, and reckless indifference to the rights of others,' or behavior even more deplorable.") (citations omitted); *id.* at 2620 (punitive damages "justified as punishment for extraordinary wrongdoing"); *State Farm Fire & Cas. Co. v. Campbell* 538 U.S. 408, 416 (2003) (punitive damages are intended to punish and deter, in contrast to compensatory damages, which "'are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct.'" (citation omitted)); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568 (1996) (punitive damages are imposed to punish unlawful conduct and deter its repetition); *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 19-20 (1991); U.S. Const. amend XIV; Conn. Const. art. I § 8.

**D-24** **PUNITIVE DAMAGES MUST BE ASSESSED WITH GREAT CAUTION**

Punitive damages are an exceptional remedy and must be assessed within narrow limits and with great care.  In deciding whether they should be imposed in this case, you should do so with great caution and should award them only if necessary to achieve deterrence and punishment, if any.  The fact that the Court is instructing you on the law of punitive damages is not meant in any way to influence your decision whether it is necessary and appropriate to impose them.

**Source:**  Connecticut Civil Jury Instructions, No. 3.4-4; *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419-20 (2003) (reversing punitive damages award where "a more modest punishment . . . could have satisfied the State's legitimate objectives" of punishment and deterrence); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 584 (1996) ("The [punitive] sanction imposed in this case cannot be justified on the ground it was necessary to deter future misconduct without considering whether less drastic remedies could be expected to achieve that goal."); *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 19-20 (1991); *Norwalk Marine Contractors, Inc. v. Manafort Bros., Inc.*, 2010 WL 2383797, at *7 (Conn. Super. Apr. 30, 2010) ("punitive damages" are part of a class of "extraordinary remedies"); *Green v. Martin*, 2004 WL 2668246, at *2 (Conn. Super. Oct. 25, 2004) ("A judicial award of punitive or exemplary damages is an extraordinary remedy."); U.S. Const. amend XIV; Conn. Const. art. I § 8.

**D-25**   **NO RIGHT TO PUNITIVE DAMAGES**

Whether to impose punitive damages is discretionary, which means that a plaintiff never has a right to an award of punitive damages, and you are not required to award them under any circumstance.

**Source:**   Connecticut Civil Jury Instructions, No. 3.4-4; *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1333 (5th Cir. 1995) ("[T]he general rule is that a plaintiff does not have a claim of right to punitive damages, and 'it is always within the discretion of the jury or trial judge to withhold them.'") (citation omitted); W. Page Keeton, et al., *Prosser & Keeton on the Law of Torts* at 14 (5th ed. 1984) ("It is generally agreed that punitive damages are a windfall to the plaintiff and not a matter of right, and that it is always within the discretion of the jury or trial judge to withhold them.").

**D-26**    **PUNITIVE DAMAGES – BURDEN OF PROOF**

You may not award punitive damages against Wyeth unless you find that Plaintiffs have proved by a preponderance of the evidence that Wyeth, in its conduct that caused injury to Plaintiffs, acted outrageously or intentionally violated Plaintiffs' rights or did so in reckless indifference to the those rights.  A reckless indifference to Plaintiffs' rights can be proven only by evidence of willful or intentional conduct, taken with an evil motive to cause injury or in reckless disregard of whether it will cause injury.  Plaintiffs are not entitled to punitive damages unless they prove there was an extreme departure from ordinary care in a situation where a high degree of danger is apparent.

Plaintiffs have the burden of proof on this issue.  This burden remains on Plaintiffs throughout the case.  Wyeth is not required to prove that it did not act outrageously, in reckless indifference, or with intentional and wanton violation of Plaintiffs' rights.

**Source:**    Connecticut Civil Jury Instructions, No. 3.4-4; Conn. Gen. Stat. § 52-240b; *Lydall, Inc. v. Ruschmeyer*, 919 A.2d 421, 443-44 (Conn. 2007) (reversing imposition of punitive damages as a matter of law; "The flavor of the basic requirement to justify an award of punitive or exemplary damages has been repeatedly described in terms of wanton and malicious injury, evil motive and violence. . . . [P]unitive damages may be awarded only for outrageous conduct, that is, for acts done with a bad motive or with a reckless indifference to the interests of others.'" (quoting *Triangle Sheet Metal Works, Inc. v. Silver*, 222 A.2d 220, 225-26 (Conn. 1966)) (omission and alteration in original); *Dubay v. Irish*, 542 A.2d 711, 718 (Conn. 1988) ("Wilful misconduct has been defined as intentional conduct designed to injure for which there is no just cause or excuse."; "While we have attempted to draw definitional distinctions between the terms wilful, wanton or reckless, in practice the three terms have been treated as meaning the same thing."; "'[W]illful,' 'wanton,' or 'reckless' conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent….'") (quoting W. Page Keeton, et al., *Prosser & Keeton on the Law of Torts* at 214 (5th ed. 1984)); *Gargano v. Heyman*, 525 A.2d 1343, 1347 (Conn. 1987) ("In fact, the flavor of the

basic requirement to justify an award of punitive damages is described in terms of wanton and malicious injury, evil motive and violence."); W. Page Keeton, et al., *Prosser & Keeton on the Law of Torts* at 14 (5th ed. 1984) ("It is generally agreed that punitive damages are a windfall to the plaintiff and not a matter of right, and that it is always within the discretion of the jury or trial judge to withhold them.").

**D-27**    <u>**NO PUNITIVE DAMAGES FOR NEGLIGENT CONDUCT**</u>

Punitive damages cannot be imposed on Wyeth for conduct which is merely negligent or even grossly negligent.

**Source**:   *Markey v. Santangelo*, 485 A.2d 1305, 1309 (Conn. 1985); *Dubay v. Irish*, 542 A.2d 711, 718 (Conn. 1988) (quoting *Bordonaro v. Senk*, 147 A. 136, 136 (Conn. 1929)); *see* Connecticut Civil Jury Instructions, No. 3.4-4.

**D-28   PUNITIVE DAMAGES MUST BE DIRECTED TO CONDUCT THAT HARMED PLAINTIFFS**

        In determining whether to award punitive damages, you must only consider the conduct by Wyeth, if any, that you find to have harmed Plaintiffs in this specific case.  You must not consider as a basis for punitive damages any conduct that did not injure Plaintiffs.

**Source**:  *Philip Morris USA v. Williams*, 549 U.S. 346, 354 (2007) ("[W]e have made clear that the potential harm at issue was harm potentially caused the ***plaintiff***.") (emphasis in original); *id.* at 356-57 ("We . . . hold explicitly that a jury may not punish for the harm caused others."); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422-23 (2003) ("A defendant should be punished for the conduct that harmed the plaintiff"; "A defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages."); *White v. Ford Motor Co.*, 500 F.3d 963, 972 (9th Cir. 2007) (reversing punitive damages award in product liability action because "there is a significant risk that the jury, in arriving at its punitive damage award, punished Ford for harm to nonparties"); *In re Simon II Litig.*, 407 F.3d 125, 139 (2d Cir. 2005) (improper to certify punitive damages class because "conduct relevant to the reprehensibility analysis must have a nexus to the specific harm suffered by the plaintiff"); *Williams v. Conagra Poultry Co.*, 378 F.3d 790, 796-99 (8th Cir. 2004) (remitting punitive damages award under due process that is partially based upon the defendant's dissimilar conduct towards persons other than the plaintiff); *Igen Int'l, Inc. v. Roche Diagnostics GMBH*, 335 F.3d 303, 313–14 (4th Cir. 2003) (district court erred in submitting punitive damages claim to jury by "extend[ing] its focus beyond" the conduct that allegedly caused plaintiff's harm); *Fowler v. State Farm Fire & Cas. Co.*, 2008 WL 3050417, at *6–7 (S.D. Miss. July 25, 2008) (applying *State Farm*, holding "only evidence related to harm to Plaintiffs is relevant"); *Estate of Embry v. GEO Transp. of Ind., Inc.*, 478 F. Supp. 2d 914, 923 (E.D. Ky. 2007) (excluding evidence for punitive damages claim because it lacked any "proximate" relationship with the alleged harm); *Byers v. Santiam Ford, Inc.*, 574 P.2d 1122, 1125 (Or. 1978); *Mason v. Householder*, 647 P.2d 980, 981-82 (Or. Ct. App. 1982); *Forquer v. Pinal County*, 526 P.2d 1064, 1067-68 (Ariz. Ct. App. 1974); *Guthrie v. Mo. Methodist Hosp.*, 706 S.W.2d 938, 942 (Mo. Ct. App. 1986); U.S. Const. amend XIV; Conn. Const. art. I § 8.

**D-29**   **LIMITING INSTRUCTION FOR CONDUCT DIRECTED TOWARD NON-PARTIES**

 

Evidence was presented of Wyeth's conduct that was directed toward other persons and had no effect on Plaintiffs.[1]  You cannot award punitive damages for this conduct.  Punitive damages can be awarded only for conduct that caused harm to Plaintiffs.

 

**Source**:   *Philip Morris USA v. Williams*, 549 U.S. 346, 354 (2007) ("[W]e have made clear that the potential harm at issue was harm potentially caused the ***plaintiff.***") (emphasis in original); *id.* at 356-57 ("We . . . hold explicitly that a jury may not punish for the harm caused others."); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422-23 (2003) ("A defendant should be punished for the conduct that harmed the plaintiff"; "A defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages."); *Byers v. Santiam Ford, Inc.*, 574 P.2d 1122, 1125 (Or. 1978); *Mason v. Householder*, 647 P.2d 980, 981-82 (Or. Ct. App. 1982); *Forquer v. Pinal County*, 526 P.2d 1064, 1067-68 (Ariz. Ct. App. 1974); *Guthrie v. Mo. Methodist Hosp.*, 706 S.W.2d 938, 942 (Mo. Ct. App. 1986); U.S. Const. amend XIV; Conn. Const. art. I § 8.

---

[1]   Wyeth has objected and will object where appropriate to admitting evidence of conduct that has no nexus to the alleged harm to Plaintiffs.  However, to the extent such evidence is admitted (and it should not be), this limiting instruction is necessary and appropriate.

**D-30**    <u>NO PUNITIVE DAMAGES FOR CONDUCT THAT WAS LAWFUL</u>

You may not award punitive damages for conduct by Wyeth that was lawful.

**Source**:    *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422-23 (2003) ("A State cannot punish a defendant for conduct that may have been lawful where it occurred."); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 572-73 (1996) ("Alabama does not have the power, however, to punish BMW for conduct that was lawful where it occurred and that had no impact on Alabama or its residents. Nor may Alabama impose sanctions on BMW in order to deter conduct that is lawful in other jurisdictions."); *id.* at 573 n.19 ("To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort.") (citation omitted); *Browning v. Wyeth, Inc.*, 831 N.Y.S.2d 804, 1170 (N.Y. App. Div. 2007) (Wyeth's "warnings provided with the drugs taken by plaintiff were adequate as a matter of law …."); U.S. Const. amend XIV; Conn. Const. art. I § 8.

39

**D-31**   **NO PUNITIVE DAMAGES FOR OUT-OF-STATE CONDUCT**

You may not award punitive damages to punish conduct that did not occur in Connecticut and that did not cause injury to Plaintiffs.

**Source**:   *Philip Morris USA v. Williams*, 549 U.S. 346, 355 (2007) (procedural protections for defendant necessary to address risk that "punitive damages awards can, in practice, impose one State's (or one jury's) policies . . . upon other States"); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 421 (2003) ("A State cannot punish a defendant for conduct that may have been lawful where it occurred;" "[n]or, as a general rule, does a State have a legitimate concern in imposing punitive damages to punish a defendant for unlawful acts committed outside of the State's jurisdiction"); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 570-75 & 585 (1996) ("While each State has ample power to protect its own consumers, none may use the punitive damages deterrent as a means of imposing its regulatory policies on the entire Nation."); *White v. Ford Motor Co.*, 312 F.3d 998, 1019-20 (9th Cir. 2002) ("The district court's refusal to limit the jury to consideration of Nevada's interests, combined with the plaintiffs' lawyers exhortations to let the decision resonate 'across the country,' compels us to conclude that the jury here was permitted to engage in 'a due process violation of the most basic sort' when it arrived at its punitive damages award."); *Yu v. Signet Bank/Virginia*, 69 Cal. App. 4th 1377, 1392 (1999) (noting that *BMW* makes clear that the Due Process Clause "thus prohibit[s] an award of punitive damages herein to punish or deter [defendants'] conduct with respect to consumers in states other than California"); *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1252-53 (10th Cir. 2000) (recognizing that *BMW v. Gore* prohibits an award of punitive damages to punish or deter a defendant's conduct with respect to consumers in other states); *Cont'l Trend Res., Inc. v. Oxy USA, Inc.*, 101 F.3d 634, 636-37 (10th Cir. 1996) (state cannot inhibit or change conduct occurring in other states); U.S. Const. amend XIV; Conn. Const. art. I § 8.

**D-32    PUNITIVE DAMAGES NOT APPROPRIATE RE:  REASONABLE
DISAGREEMENT (GENERALLY)**


Punitive damages are not appropriate if reasonable people could disagree about whether Wyeth's conduct toward Plaintiffs was correct or lawful.


**Source**:    *Southwest Tel. & Tel. Co. v. Danaher*, 238 U.S. 482, 490 (1915) (where a defendant is justified in believing that its conduct is reasonable and lawful, even if that belief turns out to be incorrect, punishing that conduct "depart[s] from the fundamental principles of justice embraced in the recognized conception of due process of law"); *Barber v. Nabors Drilling U.S.A., Inc.*, 130 F.3d 702, 710 (5th Cir. 1997) (reversing punitive damages where there was a "good faith dispute" as to the propriety of employer's conduct in ADA case); *Satcher v. Honda Motor Co.*, 52 F.3d 1311, 1317 (5th Cir. 1995) (vacating punitive damage award where evidence showed, among other things, "a genuine dispute in the scientific community" as to the conduct at issue); *Burke v. Deere & Co.*, 6 F.3d 497, 511 (8th Cir. 1993) ("An award of punitive damages is not appropriate when room exists for reasonable disagreement over the relative risks and utilities of the conduct at issue."); *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 520-23 (Ind. 1993) (no punitive damages warranted where insurance adjuster based denial of claim on police reports and other "sources of information upon which the adjuster had a right to rely"); *Hillrichs v. Avco Corp.*, 514 N.W.2d 94, 100 (Iowa 1994) ("an award of punitive damages is inappropriate when room exists for reasonable disagreement" over the defendant's conduct); *Loitz v. Remington Arms Co.*, 563 N.E.2d 397, 407 (Ill. 1990); U.S. Const. amend XIV; Conn. Const. art. I § 8.

41

**D-33**   **PUNITIVE DAMAGES NOT APPROPRIATE RE:  REASONABLE
DISAGREEMENT (SCIENTIFIC COMMUNITY)**


Punitive damages are not appropriate if Wyeth's conduct toward Plaintiffs involved complex scientific issues as to which there was room for reasonable disagreement in the scientific community.


**Source:**   *Southwest Tel. & Tel. Co. v. Danaher*, 238 U.S. 482, 490 (1915) (where a defendant is justified in believing that its conduct is reasonable and lawful, even if that belief turns out to be incorrect, punishing that conduct "depart[s] from the fundamental principles of justice embraced in the recognized conception of due process of law"); *Barber v. Nabors Drilling U.S.A., Inc.*, 130 F.3d 702, 710 (5th Cir. 1997) (reversing punitive damages where there was a "good faith dispute" as to the propriety of employer's conduct in ADA case); *Satcher v. Honda Motor Co.*, 52 F.3d 1311, 1317 (5th Cir. 1995) (vacating punitive damage award where evidence showed, among other things, "a genuine dispute in the scientific community" as to the conduct at issue); *Burke v. Deere & Co.*, 6 F.3d 497, 511 (8th Cir. 1993) ("An award of punitive damages is not appropriate when room exists for reasonable disagreement over the relative risks and utilities of the conduct at issue."); *Erie Ins. Co. v. Hickman,* 622 N.E.2d 515, 520-23 (Ind. 1993) (no punitive damages warranted where insurance adjuster based denial of claim on police reports and other "sources of information upon which the adjuster had a right to rely"); *Hillrichs v. Avco Corp.*, 514 N.W.2d 94, 100 (Iowa 1994) ("an award of punitive damages is inappropriate when room exists for reasonable disagreement" over the defendant's conduct); *Loitz v. Remington Arms Co.*, 563 N.E.2d 397, 407 (Ill. 1990); U.S. Const. amend XIV; Conn. Const. art. I § 8.

**D-34   PUNITIVE DAMAGES NOT APPROPRIATE RE:  GOVERNMENT REGULATIONS**

Punitive damages are not appropriate where a defendant has complied with applicable government regulations, standards, or statutes where the government has explicitly considered the risk at issue in the case and where the defendant has not withheld material information from the government concerning that risk.

**Source:** *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 893 (2000) (Stevens, J., dissenting) (compliance with government standards "presumably weigh[s] against an award of punitive damages"); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 579-80 (1996) ("BMW could reasonably rely on state disclosure statutes for guidance," and its compliance with these statutes provided "a good faith basis for believing" that its conduct was lawful); *Richards v. Michelin Tire Corp.*, 21 F.3d 1048, 1059 (11th Cir. 1994) (tire manufacturer not liable for punitive damages because it complied with federal standards); *Nader v. Allegheny Airlines, Inc.*, 626 F.2d 1031, 1035 (D.C. Cir. 1980) ("An airline may not be condemned as a wanton wrongdoer for conforming to the standards set and the practices approved by the [Civil Aeronautics Board]."); *Walters v. Howmedica Osteonics, Corp.*, 676 F. Supp. 2d 44, 56 (D. Conn. 2009) (dismissing punitive damages claim as a matter of law where the defendant "developed trays that complied with regulatory and customer requirements"); *Sloman v. Tambrands, Inc.*, 841 F. Supp. 699, 702-03 n.3 (D. Md. 1993) ("Since defendant successfully proved that it complied with federal regulations, the Court concludes that Tampax did not act with malice in its TSS warning and thus plaintiff is not entitled to punitive damages."); *Boyette v. L. W. Looney & Son, Inc.*, 932 F. Supp. 1344, 1348 (D. Utah 1996) (no punitive damages warranted where manufacturer's warning met OSHA standards); *Barger v. Garden Way, Inc.*, 499 S.E.2d 737, 743 (Ga. Ct. App. 1998) ("[P]unitive damages . . . are, as a general rule, improper where a defendant has adhered to [applicable] [government] regulations."); *Richetta v. Stanley Fastening Systems,* 661 F. Supp. 2d 500, 514 (E.D. Pa. 2009) (granting summary judgment on punitive damages claim where product warnings "indicates that Defendant was, if anything, attempting to minimize the risk of accidents through this warning language"); *Malcolm v. Evenflo Co.*, 217 P.3d 514,531 (Mont. 2009) ("[A] good faith effort to comply with all government regulations 'would be evidence of conduct inconsistent with the mental state requisite for punitive damages.'") (citation omitted); *Lopez v. Three Rivers Elec. Cooperative*, 26 S.W.3d 151, 160 (Mo. 2000) (en banc) (punitive damages improper in negligence and failure to warn case where there "was no evidence" of any "violation of a statute or regulation designed to prevent the injury that occurred"); *Miles v. Ford Motor Co.*, 922 S.W.2d 572, 589 (Tex. App. 1996), *aff'd in part, rev'd in part on other grounds*, 967 S.W.2d 377 (1998); *Chrysler Corp. v. Wolmer*, 499 So. 2d 823, 826 (Fla. 1986); *Prosser & Keeton on the Law of Torts* § 36, 233 n.41 (5th ed. 1984) ("In most contexts . . .

compliance with a statutory standard should bar liability for punitive damages."); David G. Owen, *Problems in Assessing Punitive Damages Against Manufacturers of Defective Products*, 49 U. Chi. L. Rev. 1, 42 (1982) ("Proof of compliance with the regulation or statute ordinarily should be deemed to be conclusive proof of good faith and hence a conclusive defense to a punitive damages claim."); *see also Satcher v. Honda Motor Co.*, 52 F.3d 1311, 1316-17 (5th Cir. 1995); *Hatfield v. Sandoz-Wander, Inc.*, 464 N.E.2d 1105, 1109 (Ill. App. Ct. 1984) ("[E]vidence of compliance with Federal government standards is relevant in a strict tort liability case both on the issue of whether a product is defective and whether the defective condition is unreasonably dangerous."); U.S. Const. amend XIV; Conn. Const. art. I § 8.

**D-35**   **PURPOSE OF PUNITIVE DAMAGES LIMITS WHEN THEY CAN BE AWARDED**

The purpose of punitive damages is to punish and deter.  You must not decide to impose punitive damages for any other purpose.

**Source**:   *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419-20 (2003) (reversing punitive damages award where "a more modest punishment . . . could have satisfied the State's legitimate objectives" of punishment and deterrence; stating that a "defendant should be punished for the conduct that harmed the plaintiff."); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 584 (1996) ("The [punitive damages] sanction imposed in this case cannot be justified on the ground that it was necessary to deter future misconduct without considering whether less drastic remedies could be expected to achieve that goal."); U.S. Const. amend XIV; Conn. Const. art. I § 8.

## D-36   PUNITIVE AND DETERRENT EFFECTS OF COMPENSATORY DAMAGES AWARD LIMIT THE IMPOSITION OF PUNITIVE DAMAGES

Although compensatory damages are awarded to compensate Plaintiffs for actual injuries, compensatory damages also have the effect of punishing and deterring misconduct.  In addition, other costs incurred by a defendant arising out of litigation further punish and deter misconduct.  Therefore, in determining whether to impose punitive damages, you should consider the deterrence and punishment imposed by any compensatory damages you may award.  Only if you find that the compensatory damages you award are insufficient to provide the proper amount of deterrence and punishment may you consider imposing punitive damages.

**Source:**  *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 426 (2003) (vacating punitive damages award as excessive; noting "punitive element" in compensatory damage award); *id.* at 419 ("It should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence."); *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986) ("Deterrence . . . operates through the mechanism of damages that are compensatory - damages grounded in determinations of plaintiffs' actual losses."); *Lane v. Hughes Aircraft Co.*, 22 Cal. 4th 405, 424 (2000) (Brown, J., concurring) ("[L]arge compensatory damage awards . . . have a strong deterrent and punitive effect in themselves.  The magnitude of such awards should be considered in deciding whether and to what extent punitive damages should be  imposed. . . .  The trial court should instruct the jury that in determining whether to impose a punitive damage award and, if so, its magnitude, the jury should consider the amount and punitive or deterrent effect of its compensatory damage award.  Only if the jury finds the compensatory damage award insufficient to punish or deter should an additional punitive award be imposed.  And if imposed, the punitive award must be limited to an amount needed to deter and punish when added to the sum already imposed as compensatory damages."); *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1106 (1993) (an award of actual damages can fulfill deterrent functions); *Smith v. Wade*, 461 U.S. 30, 94 (1983) (O'Connor, J., dissenting) ("[A]wards of compensatory damages and attorney's fees already provide

46

significant deterrence"); *Chi. Title Ins. Corp. v. Magnuson*, 487 F.3d 985, 1001 & n 9 (6th Cir. 2007) (holding "an award of punitive damages is inappropriate" in light of compensatory damages award and "insufficient reprehensibility of [defendant's] conduct"); *In re Exxon Valdez*, 270 F.3d 1215, 1244 (9th Cir. 2001) ("The cleanup expenses Exxon paid should be considered as part of the deterrent already imposed. Depending on the circumstances, a firm might reasonably, were there no punishment, be deterred, in some cases but not all, by its actual expenses. For example, a person painting his trim may not carefully mask window glass, because it is cheaper and easier to scrape the paint off the glass than to mask it carefully. But if a person ruined a $10,000 rug by spilling a $5 bottle of ink, he would be exceedingly careful never to spill ink on the rug again, even if it cost him 'only' $10,005 and he was not otherwise punished."); *Roginsky v. Richardson-Merrell, Inc.*, 378 F.2d 832, 841 (2d Cir. 1967) (reversing punitive award and noting that "heavy compensatory damages, recoverable under some circumstances even without proof of negligence, should sufficiently meet the[] objectives" otherwise served by punitive damages); *Educ. Credit Mgmt. v. Cent. Equip.*, 477 F. Supp. 2d 788, 796 (E.D. Ky. 2007) ("While the Court finds this conduct to be reprehensible, it is the opinion of this Court that the misconduct is not so reprehensible as to warrant the imposition of further sanctions" beyond other damages); *Prosser and Keeton on Torts* § 4, at 25-26 (one reason for imposing tort liability is to provide incentive to avoid future harm; this "idea of prevention shades into punishment of the offender"); *Brown v. Farkas*, 511 N.E.2d 1143, 1148 (Ill. App. Ct. 1986) ("We believe that in light of the fact that a $50,000 compensatory damage award against Brown has been ordered, an award of punitive damages in the amount of $50,000 is sufficient to punish Brown and deter others from committing a similar offense."); Clarence Morris, *Punitive Damages in Tort Cases*, 44 Harv. L. Rev. 1173, 1173-75, 1182 (1931) ("if the compensatory damages are large, the defendant is severely admonished without the addition of any punitive damages" (internal citations omitted)); U.S. Const. amend XIV; Conn. Const. art. I § 8.

**D-37    NO CONSIDERATION OF DATA AVAILABLE AFTER THE TIME PERIOD AT ISSUE**

In determining whether to impose punitive damage, you may not consider information or data that became available only after Mrs. Moss stopped taking Premarin or Prempro.

**Source:**    *Sealover v. Carey Canada*, 793 F. Supp. 569, 579 (M.D. Pa. 1992) (evidence of what the defendants learned of the hazards of asbestos after the decedent's exposure had no relevance to what they knew before the exposure and thus did not support the claim for punitive damages); *Smith v. Aqua-Flo, Inc.*, 23 S.W.3d 473, 482 (Tex. Ct. App. 2000) (in action against manufacturer of spa water pumps, subsequent report of Consumer Products Safety Commission was not evidence of knowledge of extreme degree of risk and action in conscious indifference to rights of public); *see* Conn. Gen. Stat § 52-572q(b); *LaMontagne v. EI Du Pont De Nemours & Co., Inc.*, 41 F.3d 846, 859 (2d Cir. 1994) ("[T]he seller's duty to warn encompasses only those dangers 'of which he knows, or should know.'") (citation omitted); *Id.* ("'[T]here is no duty to warn of unknown or unforeseeable risks.'"); *Basko v. Sterling Drug, Inc.*, 416 F.2d 417, 426 (2d Cir. 1969) ("As we indicated earlier, there is no duty to warn of unknown or unforeseeable risks."); *Hurley v. Heart Physicians, PC*, 898 A.2d 777, 783 (Conn. 2006) ("Generally, a manufacturer's duty to warn of dangers associated with its products pertains only to known dangers …."); *Vitanza v. Upjohn Co.*, 778 A.2d 829, 836 (Conn. 2001); U.S. Const. amend XIV; Conn. Const. art. I § 8.

**D-38    JURY MUST APPLY CALM DISCRETION AND SOUND REASON**

Throughout your consideration of whether to impose punitive damages, you must apply calm discretion and sound reason.  Damages must never be imposed because of any sympathy, bias, or prejudice with respect to any party in the case.

**Source:**   Connecticut Civil Jury Instructions, No. 3.4-4; *see e.g., Honda Motor Co. v. Oberg*, 512 U.S. 415, 432 (1994) ("Punitive damages pose an acute danger of arbitrary deprivation of property.  Jury instructions typically leave the jury with wide discretion in choosing amounts, and the presentation of evidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses, particularly those without strong local presences."); *id.* at 433 ("The problem that concerns us, however, is the possibility that a jury will not follow those instructions and may return a lawless, biased, or arbitrary verdict."); *Royal Furniture Co. v. City of Morgantown*, 263 S.E.2d 878, 883 (W. Va. 1980); U.S. Const. amend XIV; Conn. Const. art. I § 8.

**D-39**   **DISCOVERY OF CAUSE OF ACTION**


There remains one final issue for your consideration, which involves a legal issue that the Court will decide, but requires you, the jury, to decide when the plaintiff Lynn Gardner Moss knew or should have known that she could assert a legal claim against Wyeth.  The verdict form you will receive will ask you to decide whether Lynn Gardner Moss discovered or, in the exercise of reasonable care, should have discovered by October 4, 2001 that she had both suffered harm and that Wyeth's alleged conduct possibly was a potential cause of that harm. Please answer that question where indicated on the verdict form.


**Source:**   Conn. Gen. Stat. § 52-577a; *Gnazzo v. G.D. Searle & Co.*, 973 F.2d 136, 138 (2d Cir. 1992); *Collin v. Securi Int'l*, 322 F. Supp. 2d 170, 173 (D. Conn. 2004).

**D-40   WHAT IS AND IS NOT EVIDENCE**

I will now instruct you on some important guidelines to follow in your deliberations. The evidence in this case is the sworn testimony of the witnesses, the exhibits received in evidence, stipulations, and judicially noticed facts.

By contrast, the question of a lawyer is not to be considered by you as evidence. It is the witnesses' answers that are evidence, not the questions. At times, a lawyer on cross-examination may have incorporated into a question a statement which assumed certain facts to be true, and asked the witness if the statement was true. If the witness denied the truth of a statement, and if there is no direct evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because it was contained in the lawyer's question.

The famous example of this is the lawyer's question of a married witness: "When did you stop beating your wife?" You would not he permitted to consider as true the assumed fact that he ever beat his wife, unless the witness himself indicated he had, or unless there was some other evidence in the record that he had beaten his wife.

Testimony that has been stricken or excluded is not evidence and may not be considered by you in rendering your verdict. Also, if certain testimony was received for a limited purpose—such as for the purpose of assessing a witness's credibility—you must follow the limiting instructions I have given you.

Arguments by lawyers are not evidence, because the lawyers are not witnesses. What they have said to you in their opening statements and in their summations is intended to help you understand the evidence to reach your verdict. However, if your recollection of the facts differs from the lawyers' statements, it is your recollection which controls.

Exhibits which have been marked for identification may not be considered by you as evidence until and unless they have been received in evidence by the court.

To constitute evidence, exhibits must be received in evidence.  Exhibits marked for identification but not admitted are not evidence, nor are materials brought forth only to refresh a witness's recollection.

Finally, statements which I may have made concerning the quality of the evidence do not constitute evidence.

It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

**Source:**        4 Hon. Leonard B. Sand, et al., Modern Federal Jury Instructions – Civil ¶ 74-1.

**D-41    DIRECT AND CIRCUMSTANTIAL EVIDENCE**

There are two types of evidence which you may properly use in reaching your verdict.

One type of evidence is direct evidence. Direct evidence is when a witness testifies about something he knows by virtue of his own senses – something he has seen, felt, touched, or heard. Direct evidence may also be in the form of an exhibit where the fact to be proved is its present existence or condition.

Circumstantial evidence is evidence which tends to prove a disputed fact by proof of other facts. There is a simple example of circumstantial evidence which is often used in this courthouse.

Assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Since there are no windows in this courtroom you cannot look outside. As you were sitting here, someone walked in with an umbrella which was dripping wet. Then a few minutes later another person also entered with a wet umbrella. Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But on the combination of facts which I have asked you to assume, it would be reasonable and logical for you to conclude – or infer – that it had been raining.

That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact.

Circumstantial evidence is of no less value than direct evidence; for, it is a general rule that the law makes no distinction between direct evidence and circumstantial evidence but simply requires that your verdict must be based on a preponderance of all the evidence presented.

**<u>Source:</u>**      4 Hon. Leonard B. Sand, et al., Modern Federal Jury Instructions – Civil ¶ 74-2.

**D-42**   **INFERENCE DEFINED**

During the trial you have heard the attorneys use the term "inference," and in their arguments they have asked you to infer, on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess. It is a reasoned, logical conclusion that a disputed fact exists on the basis of another fact which has been shown to exist.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence. The plaintiff asks you to draw one set of inferences, while the defense asks you to draw another. It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion which you, the jury, are permitted to draw – but not required to draw – from the facts which have been established by either direct or circumstantial evidence. In drawing inferences, you should exercise your common sense.

So, while you are considering the evidence presented to you, you are permitted to draw, from the facts which you find to be proven, such reasonable inferences as would be justified in light of your experience.

**Source:**      4 Hon. Leonard B. Sand, et al., Modern Federal Jury Instructions – Civil ¶ 75-1.

**D-43**   **STIPULATION OF FACTS**

A stipulation of facts is an agreement among the parties that a certain fact is true. You must regard such agreed facts as true.

**Source:**        4 Hon. Leonard B. Sand, et al., Modern Federal Jury Instructions – Civil ¶ 74-4.

**D-44   WITNESS CREDIBILITY**

You have had the opportunity to observe all the witnesses. It is now your job to decide how believable each witness was in his or her testimony. You are the sole judges of the credibility of each witness and of the importance of his or her testimony.

It must be clear to you by now that you are being called upon to resolve various factual issues raised by the parties in the face of very different pictures painted by both sides. In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence which may help you decide the truth and the importance of each witness' testimony.

How do you determine where the truth lies? You watched each witness testify. Everything a witness said or did on the witness stand counts in your determination. How did the witness impress you? Did he or she appear to be frank, forthright, and candid, or evasive and edgy as if hiding something? How did the witness appear? What was his or her demeanor – that is, his or her behavior, bearing, manner, and appearance while testifying? Often it is not what a person says but how he or she says it that moves us.

You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life. You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case. You should consider the opportunity the witness had to see, hear, and know the things about which he or she testified, the accuracy of his or her memory, candor or lack of candor, intelligence, the reasonableness, and probability of his or her testimony and its consistency or lack of consistency and its corroboration or lack of corroboration with other credible testimony.

In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given, and all of the other evidence in the case. Always remember that you should use your common sense, your good judgment and your own life experience.

**Source:**      4 Hon. Leonard B. Sand, et al., Modern Federal Jury Instructions – Civil ¶ 76-1.

**D-45**   **BIAS**


In deciding whether to believe a witness, you should specifically note any evidence of hostility or affection which the witness may have towards one of the parties.  Likewise, you should consider evidence of any other interest or motive that the witness may have in cooperating with a particular party.

It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony.  In short, if you find that a witness is biased, you should view his or her testimony with caution, weigh it with care, and subject it to close and searching scrutiny.

**Source:**        4 Hon. Leonard B. Sand, et al., Modern Federal Jury Instructions – Civil ¶ 76-2.

**D-46    INTEREST IN OUTCOME**

In evaluating the credibility of the witnesses, you should take into account any evidence that a witness may benefit in some way from the outcome of the case.  Such interest in the outcome creates a motive to testify falsely and may sway a witness to testify in a way that advances his or her own interests.  Therefore, if you find that any witness whose testimony you are considering may have an interest in the outcome of this trial, then you should bear that factor in mind when evaluating the credibility of his or her testimony, and accept it with great care.

Keep in mind, though, that it does not automatically follow that testimony given by an interested witness is to be disbelieved.  There are many people who, no matter what their interest in the outcome of the case may be, would not testify falsely.  It is for you to decide, based on your own perceptions and common sense, to what extent, if at all, the witness's interest has affected his or her testimony.

**Source:**        4 Hon. Leonard B. Sand, et al., Modern Federal Jury Instructions – Civil ¶ 76-3.

**D-47**   **EXPERT WITNESS**

In this case, I have permitted certain witnesses to express their opinions about matters that are in issue.  A witness may be permitted to testify to an opinion on those matters about which he or she has special knowledge, skill, experience, and training.  Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing this opinion testimony, you may consider the witness's qualifications, his or her opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony.  You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case.  You should not, however, accept opinion testimony merely because I allowed the witness to testify concerning his or her opinion.  Nor should you substitute it for your own reason, judgment and common sense.  The determination of the facts in this case rests solely with you.

**Source:**        4 Hon. Leonard B. Sand, et al., Modern Federal Jury Instructions – Civil ¶ 76-9.

**D-48   CONFLICTING EXPERT TESTIMONY**

You have heard testimony of witnesses who have been called by both sides to give their expert opinion about Premarin or Prempro.  The witnesses who testified in this case did so in order to assist you in reaching a decision on the issues you are being called upon to determine in this case.

The testimony of these witnesses may conflict.  You must remember that you are the sole trier of the facts, and their testimony relates to a question of fact.  It is your job to resolve any disagreement.

The way you resolve a conflict between these witnesses is the same way that you decide other fact questions and the same way you decide whether to believe ordinary witnesses.  In addition, since they gave their opinions, you should consider the soundness of each opinion, reasons for the opinion and the witness' motive, if any, for testifying.

You may give the testimony of each of these witnesses such weight, if any, that you think it deserves in the light of all the evidence.  You should not permit a witness's opinion testimony to be a substitute for your own reason, judgment, and common sense.

You may reject the testimony of any opinion witness in whole or in part, if you conclude the reasons given in support of an opinion are unsound or, if you, for other reasons, do not believe the witness.  The determination of the facts in this case rests solely with you.

**Source:**        4 Hon. Leonard B. Sand, et al., Modern Federal Jury Instructions – Civil ¶ 76-10.

**D-49**   **JUDICIAL NOTICE [IF APPLICABLE]**

The rules of evidence permit the judge to accept facts that cannot reasonably be disputed. This is called judicial notice.  I have decided to accept as proved the fact that [insert facts the Court takes by judicial notice], even though no evidence has been introduced to prove this [these] fact(s).  You must accept this [these] fact(s) as true for purposes of this case.

**Source:**           Third Circuit Model Jury Instructions – Civil, No. 2.2.

**D-50**    <u>**USE OF DEPOSITIONS AT TRIAL**</u>

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath and swears to tell the truth, and lawyers for each party may ask questions.  A court reporter is present and records the questions and the answers.

The deposition of [name of witness], which was taken on [date], is about to be [has been] presented to you [by a video] [by reading the transcript].  Deposition testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if the witness had been present to testify.

Do not place any significance on the behavior or tone of any person reading the questions or answers.

<u>**Source:**</u>        Third Circuit Model Jury Instructions – Civil, No. 2.5.

**D-51    CHARTS AND SUMMARIES IN EVIDENCE**

[Plaintiffs or Wyeth] has [have] presented exhibits in the form of charts and summaries.  I decided to admit these charts and summaries in place of the underlying documents that they represent in order to save time and avoid unnecessary inconvenience.  You should consider these charts and summaries as you would any other evidence.

**Source:**        Third Circuit Model Jury Instructions – Civil, No. 2.7.

**D-52**   **CHARTS AND SUMMARIES NOT ADMITTED IN EVIDENCE**

Certain charts and summaries that have not been received in evidence have been shown to you in order to help explain or illustrate the contents of records, documents, testimony, or other evidence in the case.  These charts and summaries are not themselves proof of any facts. They are not binding on you in any way.  If they do not correctly reflect the facts shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the evidence.

**Source**:  Third Circuit Model Jury Instructions – Civil, No. 2.8.

**D-53    CLOSING INSTRUCTIONS REGARDING DELIBERATIONS**

I will now say some final words about your deliberations.

First, keep in mind that nothing I have said in these instructions – indeed, nothing I have said or done during this trial – is intended to suggest to you in any way what I think your verdict should be.  That is entirely for you to decide.

You will now return to decide the case.  In order to prevail, Plaintiffs must sustain their burden of proof as I have explained to you with respect to each element of every claim.  If you find that Plaintiffs have succeeded, you should return a verdict in their favor on that claim.  If you find that Plaintiffs failed to sustain their burden on any element of any claim, you should return a verdict against Plaintiffs for that claim.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement.  Each of you must decide the case for himself or herself, but you should do so only after a consideration of the case with your fellow jurors.  You should not hesitate to change an opinion when convinced that it is incorrect.  Your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors.  Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

Again, each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors.  No juror should surrender his or her conscientious beliefs solely for the purpose of returning a

unanimous verdict.

Remember also that your verdict must be based solely on the evidence in the case and the law as I have given it to you, not on anything else.  Closing arguments, or other statements or arguments of counsel, are not evidence.  If your recollection differs from the way counsel has stated the facts, then your recollection controls.

Do not discuss this case with anyone outside the jury deliberation room, even with your fellow jurors.  Also, do not read or listen to any outside information about the case during your deliberations.  And do not do any research or make any investigation.  And, of course, continue to refrain from speaking to the parties, their attorneys, the witnesses, and me.

**D-54    RIGHT TO SEE EXHIBITS AND HEAR TESTIMONY; COMMUNICATIONS WITH COURT**

You are about to go into the jury room and begin your deliberations.  If during those deliberations you want to see any of the exhibits, you may request that they be brought into the jury room.  If you want any of the testimony read back to you, may also request that.  Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can in requesting exhibits or portions of the testimony.

Your requests for exhibits or testimony – in fact any communication with the Court – should be made to me in writing, signed by your foreperson, and given to one of the marshals.  In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

**Source:**        4 Hon. Leonard B. Sand, et al., Modern Federal Jury Instructions – Civil ¶ 78-1.

**D-55**   **SELECTION OF FOREPERSON**

When you retire, you should elect one member of the jury as your foreperson.  That person will preside over the deliberations and speak for you here in open court.

**Source:**        4 Hon. Leonard B. Sand, et al., Modern Federal Jury Instructions – Civil ¶ 78-5.

**D-56**     **RETURN OF VERDICT**

      After you have reached a verdict, your foreperson will fill in the form that has been given to you, sign and date it, and advise the marshal outside your door that you are ready to return to the courtroom.

      I will stress that each of you should be in agreement with the verdict which is announced in court.  Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

      When you have reached unanimous agreement as to your verdict, you will have your foreperson specify what the nature of that verdict is, and then date and sign the verdict form. Then inform the court security officer that you have reached a verdict.  I stress that each of you must be in agreement with the verdict as contained in the verdict form and announced in court. Your verdict must be unanimous.

**Source:**      4 Hon. Leonard B. Sand, et al., Modern Federal Jury Instructions – Civil ¶ 78-6.

**D-57**   **DELIBERATIONS**

Any communication with the Court should be made to me in writing, signed by your foreperson, and given to the court security officer seated outside the jury room.  If you send out a question, I will consult with the parties before answering it, which may take some time.  You may, if you can, continue your deliberations while waiting for the answer to any question.  I will respond to your request as promptly as possible either in writing or by having you return to the courtroom so that I can address you orally.

I must also caution you that, in your communications with the Court, you should do not disclose to anyone – not even to me – how the jury stands, numerically or otherwise, on the question of the absence of liability or liability, until after you have reached a unanimous verdict. Never disclose any vote count in any note to the court.

Nothing that I have said in these instructions – and nothing that I have said or done during the trial – has been said or done to suggest to you what I think your verdict should be. What the verdict shall be is your exclusive duty and responsibility.

This completes my instruction to you.  At this time I will ask the alternate jurors to remain in the courtroom so that I might excuse them, and I ask the regular jurors to accompany the Deputy Clerk to the jury room to consider your verdict.  Thank you for your service so far, and thank you in advance for your careful and thoughtful deliberations.