UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LYNN GARDNER MOSS, et al., <br>     Plaintiffs, <br><br>     v. <br><br> WYETH, INC., et al., <br>     Defendants. | No. 3:04cv1511 (SRU) |

## RULING ON SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT

Before the court is Defendants' Supplemental Motion for Summary Judgment Regarding Statute of Limitations And Commencement Date of Lawsuit (doc. # 326). Despite more than seven years of vigorous litigation, Defendants Wyeth, Inc. and Wyeth Pharmaceuticals, Inc. (collectively "Wyeth") seek to end this case in the middle of trial by claiming that the case never formally began. Specifically, Wyeth argues this action is time-barred because plaintiffs never filed a signed waiver of service form and, as a result, the statute of limitations was never tolled under Connecticut law. I granted leave to file the supplemental summary judgment motion in order to reach its merits (doc. # 324). The motion is procedurally untimely and substantively meritless. Accordingly, the supplemental summary judgment motion (doc. # 326) is DENIED.

### I.      Background

This is a products liability action, before this court on diversity jurisdiction, involving combination hormone replacement therapy ("cHRT") products that allegedly caused breast cancer. The plaintiffs are Kenneth Moss, as executor for his late wife, Lynn Gardner Moss, and Kenneth Moss, individually. Lynn Gardner Moss ("Mrs. Moss") passed away in December 2006 after a protracted battle with breast cancer. Wyeth is a pharmaceutical company that manufactures the hormone therapy drugs Premarin, an estrogren, and Prempro, a combination of

Premarin and a progestin, which are both prescribed to combat the symptoms of menopause. Plaintiffs claim that Premarin and Prempro were unreasonably dangerous, that Wyeth promoted the drugs without adequate warnings and without adequate clinical trials examining their safety, and that Mrs. Moss's use of the drugs was a substantial contributing factor in her development of breast cancer.

On June 10, 2003, the Multi-District Litigation ("MDL") judge presiding over the Prempro product liability litigation, of which this case later became a part, issued a series of practice and procedure orders, including the following:

> Wyeth has agreed to waive service of summons pursuant to Fed. R. Civ. P. 4(d) in federal cases subject to transfer pursuant to 28 U.S.C. § 1407. Wyeth is relieved of the obligation to answer any complaint not yet answered and the complaints in subsequent tag-along actions, and the answers filed in [previous Prempro cases] will be deemed the answers in such actions.

Practice and Procedure Order No. 1, at § 2.5, attached as Ex. A to Pls.' Opp'n (doc. # 283).

Plaintiffs filed their tag-along complaint on September 10, 2004 (doc. # 1). In keeping with the MDL order above, plaintiffs mailed Wyeth a copy of the complaint with a waiver form and a notice explaining the wavier procedure, which Wyeth's representative signed on October 5, 2004. *See* Waiver of Service of Summons, attached as Ex. B to Defs.' Mem. (doc. # 280-1[1]). Wyeth returned the executed waiver to plaintiffs' counsel and promptly filed an appearance in this court on October 6, 2004 (doc. # 4). Thereafter, the case was conditionally transferred, with like cases from around the country, for initial proceedings in the Eastern District of Arkansas (doc. # 10). Plaintiffs, however, never filed the signed waiver form with the court as

---

[1] Wyeth's Memorandum of Law was originally filed as an attachment to Wyeth's Motion for Leave to File Supplemental Motion for Summary Judgment Regarding Statute of Limitations and Commencement Date of Lawsuit (doc. # 280). For convenience, citations to Wyeth's Memorandum correlate with the document's original docket number (doc. # 280-1).

contemplated under Fed. R. Civ. P. 4(d).  That alleged misstep is at the heart of Wyeth's present motion.

On January 18, 2005, while the case was still pending in the MDL court, Wyeth filed its Master Answer.  *See* Master Answer, attached as Ex. C to Pls.' Opp'n (doc. # 283).  The Answer asserted numerous affirmative defenses, including a statute of limitations defense, but made no mention of insufficient service of process or lack of personal jurisdiction.  *See id.*  In fact, over the course of the next half-decade of discovery and motions practice, Wyeth never once raised the issue of defective service.

On April 14, 2010, after the conclusion of the MDL proceedings, the case was remanded back to this court for dispositive motions and trial (doc. # 15).  I ordered that all dispositive motions be filed by November 23, 2011 (doc. # 112).  On that date, Wyeth filed a motion for summary judgment on multiple grounds, including the statute of limitations (doc. # 143). Notably, however, none of Wyeth's arguments in favor of summary judgment related to insufficient service or the relevant commencement date of the lawsuit.  Rather, Wyeth's statute of limitations defense focused solely on when plaintiffs' cause of action accrued.  Wyeth argued that the three-year limitations period on all of plaintiffs' claims started to run on October 22, 1999, the date Mrs. Moss was first diagnosed with cancer, and therefore expired before plaintiffs filed their complaint almost five years later on September 10, 2004.

At a hearing on March 1, 2012, I denied Wyeth's summary judgment motion in substantial part (doc. # 221).[2]  On the statute of limitations issue in particular, I concluded that

---

[2] Specifically, I granted summary judgment in favor of Wyeth on the breach of express warranty claim (Count VII) and the CUTPA claim (Count VIII).  *See* Mot. Hr'g Tr. (doc. # 227), at 95-96.  I also granted partial summary judgment on the "alternative design" theory of liability due to a lack of admissible expert testimony.  *See id.* at 94-95.  I denied summary judgment on

plaintiffs had raised an issue of fact whether Mrs. Moss could have known that Wyeth's drugs were to blame for her cancer before July 9, 2002—the date the Women's Health Initiative ("WHI") study was released to the general public showing a causal link between cHRT and breast cancer.  *See* Mot. Hr'g Tr. (doc. # 227), at 87-89.[3]  Thus, I ruled that it was for the jury to decide whether Mrs. Moss could have reasonably discovered "actionable harm" by Wyeth before the limitations period lapsed.  *See Bogdan v. Zimmer, Inc.*, 165 Fed. App'x 883, 884 (2d Cir. 2006) (construing "injury" under Conn. Gen. Stat. § 52-577a as "actionable harm" and emphasizing that "'actionable harm' does not occur until the plaintiff discovers an injury *and* causation") (quoting *Lagassey v. State*, 268 Conn. 723, 743 (2004)) (emphasis in original).  Should the jury agree that Mrs. Moss's cause of action accrued on July 9, 2002, her claims were

---

the remaining counts, but ruled that each of the separately pleaded claims would be treated as a single cause of action under the CPLA.  *See id.* at 87.

[3] The Connecticut Product Liability Act's statute of limitation provides as follows: "No product liability claim, as defined in section 52-572m, shall be brought but within three years from the date when the injury, death or property damage is first sustained or discovered or in the exercise of reasonable care should have been discovered."  Conn. Gen. Stat. § 52-577a.  Interpreting identical language in the statute of limitations governing negligence claims under Conn. Gen. Stat. § 52-584, the Connecticut Supreme Court has held that "the term 'injury' is synonymous with 'legal injury' or 'actionable harm.'"  *See Lagassey v. State*, 268 Conn. 723, 748 (2004); *see also Tarnowsky v. Socci*, 75 Conn. App. 560, 569 (2003) ("There is no relevant distinction, except for a difference in the stated limitation periods, between the discovery language contained in §§ 52-577a and 52-584.  We conclude therefore that, under both sections, a claimant is not time barred until he knows, or should have known, the identity of the negligent person who caused his injury to occur."), *aff'd*, 271 Conn. 284 (2004).

"'Actionable harm' occurs when the plaintiff discovers, or in the exercise of reasonable care, should have discovered the essential elements of a cause of action."  *Lagassey*, 268 Conn. at 748.  Accordingly, a plaintiff's claim accrues "when the plaintiff has knowledge of facts that would put a reasonable person on notice of the nature and extent of an injury, <u>*and* that the injury was caused by the negligent conduct of another</u>."  *Id*. (emphasis added);  *see also Tarnowsky v. Socci*,  271 Conn. 284, 288 (2004) ("A breach of duty by the defendant and a causal connection between the defendant's breach of duty and the resulting harm to the plaintiff are essential elements of a cause of action in negligence; they are therefore necessary ingredients for "'actionable harm.'").

timely so long as they were brought before July 9, 2005.  It bears mentioning, however, that at no point during that hearing, or in any subsequent pretrial motion or proceeding, did Wyeth raise the issue of defective service or the commencement date of suit.

On May 3, 2012, the same day jury selection was conducted, Wyeth filed a motion for leave to file a supplemental motion for summary judgment (doc. # 280).  I granted the motion for leave in order to reach the merits of the supplemental summary judgment motion (doc. # 324).  In this latest motion, Wyeth proposes a new spin on its statute of limitations defense.  Instead of focusing on the date the cause of action accrued, Wyeth now focuses on the date the lawsuit commenced.  Wyeth argues that, because plaintiffs never filed the signed waiver of service form, this action never formally commenced under Connecticut law.  As a result, Wyeth argues, the statute of limitation was never tolled and has since expired.

**II.     Discussion**

The determination of when an action is "commenced" for the purposes of the statute of limitations differs depending upon whether the action is based on state or federal law.  *See Walker v. Armco Steel Corp.*, 446 U.S. 740 (1980).  Rule 3 of the Federal Rules of Civil Procedure provides that a civil action is commenced upon the filing of the complaint.  Fed. R. Civ. P. 3.  In *Walker*, however, the Supreme Court held that Rule 3 "does not affect state statutes of limitations" in diversity actions, but simply "governs the date from which various timing requirements of the Federal Rules begin to run."  *Id.* at 751.  Thus, "[w]hen a federal court adjudicates state law claims, state statutes of limitations govern the timeliness of state law claims, and state law determines the related question of what events serve to commence an action and to toll the statute of limitations."  *Wilson v. Midway Games, Inc.*, 198 F. Supp. 2d 167, 174 (D. Conn. 2002) (internal quotation marks omitted).

Here, the parties agree that plaintiffs' underlying claims are governed by the Connecticut Products Liability Act ("CPLA") and its three-year statute of limitations. *See* Conn. Gen. Stat. § 52-577a. Unlike its federal counterpart, Connecticut law provides that a lawsuit is "brought" not upon the filing of the complaint, but upon service of process on the defendant. *See Kotec v. Japanese Educ. Inst.*, 321 F. Supp. 2d 428, 431 (D. Conn. 2004) ("It is well settled that in Connecticut (unless otherwise specified by the legislature) a case is considered 'brought' for purposes of a statute of limitations on the date of service of the complaint upon the defendant and that, in a federal diversity action, such state rules control and not Fed. R. Civ. P. 3."). Thus, the CPLA's limitations period is not tolled in a federal diversity action until the defendant is served with a copy of the summons and complaint. *See Converse v. General Motors Corp.*, 893 F.2d 513, 515-16 (2d Cir. 1990) (affirming the dismissal of a complaint filed before, but served after, the expiration of the limitations period and stating "the Connecticut Supreme Court has long adhered to the rule that only actual service upon the defendant will satisfy the state statute of limitations").

This general rule, which already has the potential to ensnare many an unwary plaintiff, becomes even more complicated when a plaintiff forgoes formal service and chooses instead to seek a waiver of service under Federal Rule of Civil Procedure 4(d). Rule 4(d) excuses formal service of process when a waiver is executed by the defendant, returned to the plaintiff, and filed with the court. Fed. R. Civ. P. 4(d). Under this alternative procedure, service is deemed to have taken place upon the filing of the waiver form. *See* Fed. R. Civ. P. 4(d)(4) ("When the plaintiff files a waiver, proof of service is not required and these rules apply as if a summons and complaint had been served *at the time of filing* the waiver.") (emphasis added); *see also* Fed. R. Civ. P. 4, Adv. Comm. Notes, 1993 Amendments ("The revised rule is clear that, if the waiver is

not returned and filed, the limitations period under [state law] is not tolled and the action will not otherwise proceed until formal service of process is effected."). Thus, "when a request to waive service is used, the complaint is served for statute of limitations purposes only when the executed waiver is filed with the court, and not, for example, when the plaintiff mails the request for waiver to defendant." *Bouchard v. DHL Express (USA)*, 716 F. Supp. 2d 202, 206 (D. Conn. 2010), *vacated on other grounds by* 2012 WL 32953 (D. Conn. Jan. 6, 2012).

Here, plaintiffs did not file the waiver of service form and therefore never formally completed the procedure contemplated under Rule 4(d). Wyeth argues that, as a result of this failure, plaintiffs' suit never formally "commenced" under Connecticut law and the statute of limitations governing plaintiffs' claims was never tolled. In Wyeth's view, the three-year limitations period, which continued to run year after year while this litigation proceeded, has long since expired and plaintiffs' claims should be dismissed.

As explained more fully below, Wyeth's supplemental summary judgment motion is denied because the motion: (1) is untimely in light of the dispositive motion deadline; and (2) lacks substantive merit.

### A. Wyeth's Supplemental Summary Judgment Motion is Untimely

As an initial matter, Wyeth's supplemental summary judgment motion is procedurally improper and is denied on that ground. Federal Rule of Civil Procedure 56(b) provides: "Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). Where, as here, a scheduling order has been imposed, a "party may file a motion for summary judgment 'at any time' until the time limit for filing motions under a district court's Federal Rule 16(b) scheduling order expires." *Julian v. Equifax Check Services, Inc.*, 178 F.R.D.

10, 15 (D. Conn. 1998). "The failure to abide by the Court's scheduling order without any showing of good cause is sufficient grounds to deny [a party's] motion for summary judgment." *NAS Electronics, Inc. v. Transtech Electronics PTE Ltd.*, 262 F. Supp. 2d 134, 150 (S.D.N.Y. 2003). A showing of "good cause" requires a "greater showing than excusable neglect." *Odom v. Matteo*, 772 F. Supp. 2d 377, 405 (D. Conn. 2011) (internal quotation marks omitted).

Here, the scheduling order required all dispositive motions to be filed no later than November 23, 2011[4] (doc. # 112). Wyeth's supplemental motion, filed on May 3, 2012, comes far too late. Moreover, Wyeth offers no justification for the delay. No new developments of law or previously undiscoverable facts warranted a belated filing. Wyeth's able counsel has had daily access to every filing on the court's docket sheet for the past seven years. Therefore, Wyeth either knew or should have known that plaintiffs neglected to file the waiver form long before dispositive motions were due. Under these circumstances, Wyeth's failure to raise the issue before this late date is inexcusable. Given Wyeth's dilatoriness, and the prejudice plaintiffs will inevitably suffer from an eleventh-hour motion for summary judgment, the motion must be denied.

B. Wyeth's Supplemental Summary Judgment Motion Lacks Merit

Moreover, even if timely filed, Wyeth's supplemental summary judgment motion must still be denied because it lacks substantive merit. As indicated above, Wyeth's new arguments in favor of summary judgment on statute of limitations grounds are predicated on defective service of process. However, it is well settled that an objection to defective service, like any personal jurisdiction defense, "is a privileged defense that can be waived 'by failure to assert it

---

[4] The original scheduling order required that summary judgment motions be filed by November 9, 2011 (doc. # 38). However, on September 23, 2011, I granted the parties' joint motion for extension of time and extended the deadline to November 23, 2011 (doc. # 112).

seasonably, by formal submission in a cause, or by submission through conduct.'" *Subway Intern. B.V. v. Cere*, 2011 WL 3511462, at *3 (D. Conn. Aug. 11, 2011) (quoting *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 168 (1939)).

First, Wyeth appears to have preemptively waived service of process as part of the MDL proceedings. According to the 2003 MDL practice and procedure order cited above, Wyeth "agreed to waive service of summons pursuant to Fed. R. Civ. P. 4(d) in federal cases subject to transfer pursuant to 28 U.S.C. § 1407." Indeed, if Wyeth waived service in advance for all Prempro-related cases consolidated in the MDL court, then the mailing of the waiver form was mere surplusage: regardless of the requirements of Rule 4(d), this action "commenced" (and the limitations period tolled) on December 6, 2004—the date plaintiffs' case was transferred to the MDL court (doc. # 10). Notably, that date rests securely within the three-year limitations period, assuming that Mrs. Moss's cause of action accrued in July 2002.

Wyeth interprets the MDL order far more narrowly, arguing that it simply agreed to utilize the procedures under Rule 4(d), and that an "agreement to use the procedures in Rule 4(d) is not a *waiver* of those very procedures." *See* Reply Mem. (doc. # 286), at 2 (emphasis in original). That argument, however, collapses under its own weight. The only procedures Rule 4(d) governs are those for "*requesting*" a waiver of service. *See* Fed. R. Civ. P. 4(d) (entitled "Requesting a Waiver"). There's no need to "request" something a party has already agreed to do in advance. Moreover, an agreement merely to abide by Rule 4(d)'s procedures wouldn't be much of an agreement at all: Wyeth, like all domestic corporations, is always under a "duty to avoid unnecessary expenses of serving the summons," even in the absence of an order to that effect. *See* Fed. R. Civ. P. 4(d)(1). Lastly, the language and structure of the MDL order itself belies Wyeth's narrow interpretation. The order begins by acknowledging that Wyeth "has

- 9 -

agreed to waive service," but then goes on to state in the very next sentence that "Wyeth is relieved of the obligation to answer any complaint not yet answered." Read together, these two statements imply a quid pro quo: Wyeth agreed to waive service *in exchange* for being relieved of the obligation to file individual answers in subsequent cases. Thus, the MDL order, properly construed, obviated the need for formal service of process in tag along actions, such as the one at bar.

Second, even assuming, *arguendo*, that Wyeth did not waive formal service in advance in connection with the MDL order, Wyeth nonetheless waived the defense in a more traditional manner—by failing to raise any defense or motion challenging the adequacy of service of process. The law is clear that a "defense of insufficient service of process is waived if it is not asserted by motion under Fed. R. Civ. P. 12 or in the party's responsive pleading." *Orix Financial Services, Inc. v. Cline*, 369 Fed. App'x 174, 177 (2d Cir. 2010). Federal Rule of Civil Procedure 12(h)(1) provides in relevant part:

> A party waives any defense [of lack of personal jurisdiction over the person, insufficient process, or insufficient service of process] by . . . failing to either: (i) make it by motion under this rule; or (ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course.

Fed. R. Civ. P. 12(h)(1); *see also Santos v. State Farm Fire & Cas. Co.*, 902 F.2d 1092, 1095 (2d Cir. 1990) (insufficient service of process defense waived where defendant answered the complaint, but failed to mention service of process and did not move to dismiss for improper service of process until two years later); *Pitchell v. Hartford*, 247 Conn. 422, 432–33 (1999) (holding claim of lack of jurisdiction over person as result of insufficiency of service of process waived unless raised by motion to dismiss within thirty days after filing appearance). Even where the defense of insufficient service was initially raised in a responsive pleading, courts

have nevertheless held the defense waived when defendants continued to litigate the merits of the case without reasserting the defense. *See, e.g.*, *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 61-62 (2d Cir. 1999) (holding that defendant that had raised personal jurisdiction defense in its answer forfeited the defense by failing to raise the defense again for four years, during which time the defendant participated in considerable pretrial activity).

Here, Wyeth abandoned any objection to insufficient service of process when it failed to raise the defense in its responsive pleading and continued to litigate the case year after year without ever questioning plaintiffs' failure to file the executed waiver of service form. Wyeth's Master Answer, filed January 18, 2005, asserted a total of thirty-four affirmative defenses, not one of which disputed service of process or personal jurisdiction. Thus, as of January 18, 2005, Wyeth had effectively waived any defect in the service of process and, as a result, the lawsuit had effectively "commenced" for purposes of tolling the statute of limitations under Connecticut law. Assuming Mrs. Moss's claims accrued in July 2002, Wyeth's waiver came comfortably within the three-year limitations period following their accrual.

Moreover, because the waiver here occurred *prior* to the expiration of the limitations period, Wyeth's reliance on *Bouchard*, 716 F. Supp. 2d at 206, is misplaced. In *Bouchard*, the court dismissed the plaintiff's claims as untimely when the waiver of service form was filed two months *after* the expiration of the limitations period. *Id.* Here, in contrast, Wyeth effectively waived any objection to plaintiffs' failure to file the waiver form six months *before* the limitations period lapsed. Thus, Wyeth is left "complaining only about a defect in the form of service, one that could have been readily cured during the limitations period if defendant had promptly complained." *Datskow v. Teledyne, Inc. Continental Products Div.*, 899 F.2d 1298, 1303 (2d Cir. 1990).

**III.     Conclusion**

In sum, Wyeth's Supplemental Motion for Summary Judgment Regarding Statute of Limitations And Commencement Date of Lawsuit (doc. # 326) is procedurally untimely and substantively without merit.  Accordingly, the motion is hereby DENIED.

It is so ordered.

Dated at Bridgeport, Connecticut, this 17th day of May 2012.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge