# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LYNN GARDNER MOSS and
KENNETH P. MOSS,                        :
                                                                    Case No. 3:04-CV-01511-SRU
                Plaintiffs,      :

      - against -                       :
                                                                    May 20, 2012
WYETH, INC. and WYETH                :
PHARMACEUTICALS, INC.,
                                                    :
               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## WYETH'S SUPPLEMENTAL PROPOSED JURY INSTRUCTIONS

Wyeth submits the following supplemental proposed jury instructions, in addition to those Wyeth submitted previously. Doc. No. 271-12:

- D SUPP 1 - CONNECTICUT PRODUCTS LIABILITY ACT – DESIGN DEFECT

- D SUPP 1A (ALTERNATIVE) - CONNECTICUT PRODUCTS LIABILITY ACT – DESIGN DEFECT

- D SUPP 1B  (ALTERNATIVE) - CONNECTICUT PRODUCTS LIABILITY ACT – COMMENT K

- D SUPP 2 - CONNECTICUT PRODUCTS LIABILITY ACT – DESIGN DEFECT, CAUSATION

- D SUPP 3 - DISCOVERY OF CAUSE OF ACTION

Each instruction is submitted as a separate request, and a separate ruling is respectfully requested for each instruction.   Among these supplemental instructions are *conditional* proposed jury instructions relating to Plaintiff's purported design defect claims.   Wyeth continues to assert its objection that Plaintiffs' design defect claim is not a legally viable claim and should not be submitted to the jury.   Wyeth also continues to assert its objection that comment k is not an

affirmative defense under Connecticut law, and that the burden of establishing the adequacy of the labeling does not lie with Wyeth.[1]

In further support of Wyeth's position with respect to the design defect and comment k instructions, attached is a post-CPLA decision by the United States District Court for the District of Connecticut that Wyeth submits as supplemental authority. *Gold v. Dalkon Shield Claimants Trust*, No. B-82-383, 1997 U.S. Dist. LEXIS 23555 (D. Conn. Dec. 23, 1997) (attached as Ex. A). In *Gold*, the District Court determined that for purposes of comment k, a contraceptive device was comparable to "unavoidably unsafe products such as pharmaceuticals" because medical devices – just like pharmaceutical products – "are incapable of being made completely safe for human use, given our present level of scientific knowledge." *Id.* at *6. The Court explained that under comment k, "a manufacturer of a medical device or pharmaceutical may not be held strictly liable for a design or manufacturing defect, it may be strictly liable for a failure to warn." *Id.* at *7. Therefore, the Court dismissed plaintiff's strict liability claim to the extent it alleged design or manufacturing defects and held that the complaint "may allege <u>only</u> a failure to warn." *Id.* at *15 (emphasis added). To allow Plaintiffs here to assert a design defect claim would run contrary to the *Gold* decision, and create a split of authority within the District Court of Connecticut.

The *Gold* opinion, written by United States District Court Senior Judge Ellen Bree Burns, is consistent with pre- and post-CPLA law as expressed in Connecticut state court, the District of Connecticut, and other courts within the Second Circuit. *See, e.g.*, *Vitanza v. Upjohn Co.*, 778 A.2d 829 (Conn. 2001); *Hurley v. The Heart Physicians, P.C.*, 898 A.2d 777 (Conn. 2006);

---

[1] *See* Wyeth's Motion and Memorandum of Law in Support of Motion for Summary Judgment and Reply in Support, and Wyeth's Bench Brief Regarding Design Defect Claims Under Connecticut Law. Doc. Nos. 145, 176, 295, and all oral arguments regarding same.

*Goodson v. Searle Laboratories*, 471 F. Supp. 546, 548 (D. Conn. 1978) (Burns, J.); *Basko v. Sterling Drug, Inc.*, 416 F.2d 417 (2d Cir. 1969) (applying Connecticut law); *Lindsay v. Ortho Pharm. Corp.*, 637 F.2d 87 (2d Cir. 1980) (applying New York law).[2]

Subject to and without waiving any objections to the validity of Plaintiff's purported design claim,[3] Wyeth submits that to the extent the Court intends to charge the jury on a strict liability design defect claim, the Court should charge the jury based upon Wyeth's proposed supplemental instruction D SUPP 1, in accordance with Restatement (Third) or Torts: Products Liability § 6(c), and D SUPP 2. If the Court rejects the Restatement (Third) standard, subject to and without waiving any objections to an affirmative defense burden on Wyeth regarding comment k, to the extent the Court intends to charge the jury in this manner, the Court should charge based upon D SUPP 1A (ALTERNATIVE), D SUPP 1B (ALTERNATIVE), and D SUPP 2. To the extent the Court intends to charge the jury that Wyeth has an affirmative defense burden, the jury should only be instructed that the manufacturer of a prescription pharmaceutical product "can avoid strict liability if the product is . . . accompanied by proper . . . warning." *Hurley v. Heart Physicians, P.C.*, 898 A.2d 783 (Conn. 2006).[4] No reading of *Hurley* requires the jury to required to make a finding that the product at issue is "unavoidably unsafe."

---

[2]  Despite the law in this circuit on these issues, Plaintiffs' proposed instructions and arguments focus heavily on opinions from courts in the First Circuit applying New Hampshire law and an Idaho court - - *Toner v. Lederle Laboratories*, 732 P.2d 297 (Idaho 1987). Notably, *Toner* relied heavily on then-California law, as decided by intermediate California courts, especially *Kearl v. Lederle Laboratories*, 218 Cal. Rptr. 453 (Cal. App. 1985). *See Toner*, 732 P.2d at 305-11 (citing *Kearl* seventeen times, as well as three other California cases). However, the California Supreme Court subsequently examined comment k, and rejected design-based liability in the field of prescription drugs outside a manufacturing or warnings defect. *Brown v. Superior Court*, 751 P.2d 470, 477 (Cal. 1988) (specifically "disapprov[ing]" *Kearl*)

[3]  By submitting these proposed instructions, Wyeth is also not waiving its right to continue to contest the legal viability of this claim, including in any subsequent motions for judgment as a matter of law, post-trial briefing, and any subsequent appellate proceedings.

[4]  An even more compelling reason exists as to why this Court should not conclude that the Connecticut Supreme Court would embrace a cause of action in a pharmaceutical products liability case in

Wyeth respectfully reserves the right to submit additional supplemental instructions and special interrogatories or withdraw or modify any of these instructions as may be required by further rulings of the Court, the presentation of evidence during the trial, the filing of proposed instructions by other parties, and any ruling by the Court following the submission of those instructions.   By submitting these proposed instructions, Wyeth does not admit the claims to which they pertain should be submitted to the jury and does not concede that there is any evidence to support the submission of the attached instructions.   Wyeth also respectfully reserves the right to assert any objections and to make any requests that it deems appropriate (including, without limitation, "no-evidence" objections) to the charge submitted to the jury to the Court.

DATED:  May 20, 2012

Respectfully submitted,

*/s/ Joseph W. Martini*
Joseph W. Martini (ct07225)
Wiggin and Dana, LLP
2 Stamford Plaza
281 Tresser Blvd.
Stamford, CT 06901
Telephone: (203) 363-7600
Facsimile: (203) 363-7676
Email:  jmartini@wiggin.com

*Counsel for Wyeth*

---

defective drug design and putting the burden of proof under comment k on the defendant that the drug is "unavoidably unsafe."  Plaintiffs' proposed instructions allow the defendants a risk-utility defense only after defendants prove that the drug was properly prepared and marketed and proper warning was given.  At the same time, it is indisputable that on Plaintiffs' failure-to-warn claim the Plaintiffs bear the burden of proof.  Thus, a jury could very well find against the Plaintiffs' warning claim—that the warnings were adequate—and for the Plaintiffs on their design claim—that defendants' warnings were not adequate.  Numerous courts have cautioned that the identical issue should never be given to a jury twice in the same case in different forms.  To do so invites inconsistent verdicts that mandate a mistrial.  *See, e.g., Tipton v. Michelin Tire Co.*, 101 F.3d 1145, 1150 (6th Cir. 1996); *Lecy v. Bayliner Marine Corp.*, 973 P.2d 1110 (Wash. Ct. App. 1999); *Kosmynka v. Polaris Indus., Inc.*, 462 F.3d 74 (2d Cir. 2006).  An instruction that requires that the same issue be decided by a jury twice in the same trial with differing burdens of proof each time, is simply improper.

**D SUPP 1 –** **CONNECTICUT PRODUCTS LIABILITY ACT – DESIGN DEFECT**

Plaintiffs claim that Premarin and Prempro was defectively designed. For this claim, Plaintiffs bear the burden to prove by a preponderance of the evidence that the foreseeable risks of harm posed by Premarin and Prempro are sufficiently great in relation to their foreseeable benefits that reasonable doctors, knowing of such foreseeable risks and benefits, would not prescribe Premarin and Prempro for any class of patients.

**Source:** Restatement (Third) of Torts: Products Liability § 6(c); *Sita v. Danek Med., Inc.*, 43 F. Supp. 2d 245, 258 (E.D.N.Y. 1999); *Gebhardt v. Mentor Corp.*, 191 F.R.D. 180, 185 (D. Ariz. 1999), *aff'd*, 15 F. App'x 540 (9th Cir. 2001); *Madsen v. Am. Home Prods. Corp.*, 477 F. Supp. 2d 1025, 1037 (E.D. Mo. 2007); *Harrison v. Howmedica Osteonics Corp.*, 2008 WL 906585, at *21-22 (D. Ariz. Mar. 31, 2008). The Connecticut Supreme Court has adopted comment *k* to the Restatement (Second) of Torts § 402A in *Vitanza v. Upjohn Co.*, 778 A.2d 829, 840, 844 (Conn. 2001); *accord Vitanza v. Upjohn Co.*, 271 F.3d 89, 92 (2d Cir. 2001).

**D SUPP 1A (ALTERNATIVE) -**   **CONNECTICUT PRODUCTS LIABILITY ACT –**
**DESIGN DEFECT**

Plaintiffs claim that Premarin and Prempro were defectively designed.  For this claim, Plaintiffs bear the burden to prove by a preponderance of the evidence that the condition which is claimed to be a design defect made the product unreasonably dangerous for its intended use.  A product is unreasonably dangerous as designed if, at the time of sale, it is defective to an extent beyond that which would be contemplated by a reasonable physician.  In this determination, you should consider the state of scientific and medical knowledge at the time of manufacture and distribution.

In determining whether a reasonable physician would consider the product design unreasonably dangerous, a number of factors may be considered including the usefulness of the product, the likelihood and severity of the danger posed by the design, and the ability to reduce the product's danger without impairing its usefulness.

A product seller is not in the position of guaranteeing that no one will ever be injured while using its product, and a product seller is not liable for injuries simply because those injuries occurred during the use of its product.


**Source:**  *Potter v. Chicago Pneumatic Tool Co.*, 694 A.2d 1319 (Conn. 1997); Conn. Civil Jury Instructions 3.10-1.

**D SUPP 1B  (ALTERNATIVE) –   <u>CONNECTICUT PRODUCTS LIABILITY ACT –
                                 COMMENT K</u>**

Premarin and Prempro are not defectively designed if they were accompanied by proper warnings to Dr. Mary Ellen May.

**Source:** *Hurley v. Heart Physicians, P.C.*, 898 A.2d 777 (Conn. 2006).

**D SUPP 2 –   CONNECTICUT PRODUCTS LIABILITY ACT – DESIGN DEFECT,
CAUSATION**

If you find that Plaintiffs have proven that Premarin and Prempro were defectively designed, then Plaintiffs must further prove that the design defect caused Mrs. Moss's breast cancer. This causation analysis has two elements that Plaintiffs must prove.

First, Plaintiffs must prove that taking Premarin and Prempro was a "cause-in-fact" of Mrs. Moss's breast cancer. The test for cause-in-fact is: "Would Mrs. Moss's breast cancer have occurred were it not for taking Premarin and/or Prempro?" If your answer is "yes," then taking Premarin and Prempro was not a cause in fact of Mrs. Moss's injuries. A causal connection between taking Premarin and Prempro and Mrs. Moss's breast cancer, if any, must be based upon proven facts.

Second, Plaintiffs must prove that taking Premarin and Prempro was the "proximate cause" of Mrs. Moss's breast cancer. When answering this question, you must apply the same definition for proximate cause as I provided you earlier.

Plaintiffs must prove that a design defect of Premarin and Prempro caused Mrs. Moss's breast cancer to a reasonable degree of medical probability based upon competent expert testimony. The fact that Mrs. Moss developed breast cancer is insufficient, in itself, to prove causation.

**Source:** Connecticut Civil Jury Instructions, Nos. 3.1-1 to 3.1-4, 3.10-1 to 3.10-2; *Winn v. Posades*, 913 A.2d 407, 411, 413 (Conn. 2007); *Craig v. Driscoll*, 813 A.2d 1003, 1016-18 (Conn. 2003); *Grody v. Tulin*, 365 A.2d 1076, 1079-80 (Conn. 1976); *Peatie v. Wal-Mart Stores, Inc.*, 961 A.2d 1016, 1025-26 (Conn. App. Ct. 2009); *Russo v. Phoenix Internal Med. Assocs., PC*, 950 A.2d 559, 566 (Conn. App. Ct. 2008); *DeOliveira v. PMG Land Assocs., L.P.*, 939 A.2d 2, 8 (Conn. App. Ct. 2008); *Weigold v. Patel*, 840 A.2d 19, 25 (Conn. App. Ct. 2004); *Vickers v. Jessup*, 629 A.2d 457, 460-61 (Conn. App. Ct. 1993); *Goodall v. United Illuminating*, 1998 WL 914274, at *7-8 (Conn. Super Ct. Dec. 15, 1998); Restatement (Second) of Torts § 431.

**D SUPP 3 - <u>DISCOVERY OF CAUSE OF ACTION</u>**

There remains one final issue for your consideration, which involves a legal issue that the Court will resolve, but requires you, the jury, to decide whether the plaintiff Lynn Gardner Moss had incurred what the law calls "actionable harm" by a certain date.  The verdict form you will receive will ask you to decide whether Mrs. Moss discovered or, in the exercise of reasonable care, should have discovered before September 10, 2001[5] that she might have a legal claim against Wyeth because Wyeth may have breached a duty owed to Mrs. Moss and that her injuries may have been caused by that breach.  Please answer that question where indicated on the verdict form.  You will need to answer the question even if you have decided in Wyeth's favor on the issues of liability or damages.

In deciding whether Mrs. Moss discovered or should reasonably have discovered actionable harm by the date that I have given you, you may take into account all the evidence you have credited regarding what Mrs. Moss understood about her condition and about Prempro, including what Dr. May had discussed with her about her condition and about Prempro, and all other circumstances bearing on when Mrs. Moss had some indication, even if not a firm indication, that she may have suffered harm allegedly caused by Wyeth and Prempro or when she should have had that understanding in the exercise of reasonable care.

**Source:** Conn. Gen. Stat. § 52-577a; *Gnazzo v. G.D. Searle & Co.*, 973 F.2d 136, 138 (2d Cir. 1992); *Collin v. Securi Int'l*, 322 F. Supp. 2d 170, 173 (D. Conn. 2004); *Lagassey v. State*, 846 A.2d 831, 846-49 (Conn. 2004); *Lambert v. Stovell*, 529 A.2d 710, 713 (Conn. 1987); *Burke v.*

---

[5]   Wyeth asserts that Plaintiffs failed to toll the statute of limitations under Connecticut law by filing a signed waiver of service of summons form.  *See* Wyeth's Motion and Memorandum in Support of its Supplemental Motion for Summary Judgment Regarding Statute of Limitations and Commencement Date of Lawsuit and Reply in Support of Same.  Doc. Nos. 280, 286, 324, 326.  Subject to and without waiving that argument, for the purposes of simplifying this instruction and the question on the verdict form, Wyeth has included the period of time before September 10, 2001 – three years before Plaintiff filed her Complaint – as a range of time that would plainly bar Plaintiffs' action under any conceivable theory if the jury decides the action accrued during that time.

*Planned Parenthood of Connecticut, Inc.*, No. 082186, 2 CSCR 958 (Conn. Super. Ct. Aug. 20, 1987).

## **CERTIFICATION**

I hereby certify that on May 20, 2012, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Joseph W. Martini*
Joseph W. Martini